## C. Edward Barnett and E. G. Barnett, Trading as United Stokers Company, Appellants, v. G. R. Kennedy, Trading as Kennedy Laundry, Appellee.

### Gen. No. 9,327.

at the February term, 1942.          Heard in this court
                                     Opinion filed May 20, 1942.

C. Victor Cardose, of Springfield, for appellants; Homer D. McLaren, of Springfield, of counsel.

S. Phil Hutchison, of Springfield, for appellee; James E. Londrigan of Springfield, of counsel.

Mr. Justice Fulton delivered the opinion of the court.

Defendant appellee, contracted to buy from the appellants one Twin United Stoker and controls pertaining thereto. The agreed price for the purchase and complete installation was fixed at the sum of $1,672.80, to be paid as follows: $275 cash due 30 days after the installation, and five notes in the sum of $232.96 each, the first one becoming due six months after date.

A written memorandum of agreement was entered into dated April 20, 1939. Among other provisions it contained the following preliminary statement: ''Whereas, Party of the Second Part (Appellants) has made an engineer analysis of the adaptability of such stoker to the laundry plant, and has made a computation as to the probable consumption of coal in said plant and upon such computation is desirous of in-

stalling such stoker in said plant for a trial period of thirty days based upon the following understanding.".

After stating the specifications of the stoker and the manner in which payments should be made, the contract was premised on the condition that installation of the stoker would save defendant 20 per cent on the coal tonnage. A 30-day trial operation was specified, dating from the date of installation and that if the installation of the stoker did not save the appellee 20 per cent on the cost of the coal, that appellants agreed to remove the stoker and restore the heating equipment to its original condition and to bear all costs of such removal.

The facts show that C. Edward Barnett, one of the appellants, solicited the sale of the Twin Stoker to the appellee, for about the period of one year before the sale was made. Appellee was in the laundry business and had tried out one stoker theretofore which failed to work. After the stokers were installed by appellants, the appellee Kennedy repeatedly complained to appellants that he could not get up sufficient steam pressure to operate his laundry and appellant made many trips to the plant endeavoring to correct the trouble. There is much conflict in the testimony but appellee testified that some 60 days after installation he gave to appellant a check for $275, and executed a conditional sales contract on the representations of appellant that his company was after him and that if appellee would sign such contract, he, the appellant, would see that the stoker was made to work; that if it did not work he would remove it and return to Kennedy the $275.

The court permitted testimony as to the oral representations made by Barnett in respect to the sale of the stokers and also his promises to see that the stokers would work as provided in the contract.

A great deal of testimony was introduced showing continued difficulty with the new plant and it is quite

apparent that it never worked satisfactorily and never saved anything by way of fuel consumption. Appellee knew nothing about the construction or operation of a stoker and left everything to the judgment of appellant.

In the conditional sales contract signed on July 19, 1939, there appeared the following clause: "No warranties have been made by the seller unless endorsed thereon in writing." It is the contention of appellant that the conditional sales contract supersedes all prior negotiations and that parol evidence is inadmissible to prove an implied warranty beyond the terms of such written contract.

The appellee insists that the stoker definitely failed to perform the duties for which it was purchased and that under the circumstances of this case there was an implied warranty that the stoker was reasonably fit for the particular purpose for which it was purchased.

The case was tried before the circuit court of Sangamon county and resulted in a finding and judgment in favor of the appellee. This appeal seeks to reverse such judgment.

Chapter 121½, par. 15, sec. 1, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 121.19], provides: "Where the buyer expressly or by implication makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

Appellee was in the laundry business. He was approached by one of the appellants who sought to sell him a Twin Stoker that would operate more efficiently than firing his boiler by hand, and after considerable urging signed a contract for the purchase of the stoker, which was subsequently installed. There is testimony by many witnesses that the stoker never worked prop-

erly. The fireman in charge of the plant stated that when hand firing he could raise the steam pressure to 100 pounds in one hour but with the new stoker it took him two hours to get 60 pounds pressure, and that the steam pressure was insufficient to operate the laundry successfully. Clinkers formed in large masses because of the intense heat in the fire box. This condition frequently caused the shearing of the pins and replacement of new ones. Other defects were testified to and not denied. The cost of coal was not reduced and Mr. Barnett, one of the appellants, was appealed to on repeated occasions to remedy the difficulties. For several months the appellee relied upon the said appellant to place the plant in good working order but finally notified him to remove the same and restore the heating plant to its original status.

The appellants made no attempt to prove that the stokers were fit for the particular purpose for which they were intended to serve but relied entirely on the conditional sales contract being a complete agreement which negatives any warranties not definitely a part of the contract because of the following clause: "No warranties have been made by the seller unless endorsed hereon in writing." We believe the cases cited by appellants in support of their position do not apply to the present case. In *Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co.,* 334 Ill. 281, it was stated that if the original contract purported on its face to be a complete expression of the whole agreement, it is presumed that the parties introduced into it every material item and term, and oral evidence is not admissible to add another term to the agreement about which the contract is silent. However, in the present case the conditional sales contract was no part of the original agreement, and the circumstances of the case are such that the appellee had a right to defend on the ground of an implied warranty. The court properly admitted oral testimony not for the purpose of vary-

ing the terms of the original agreement, but because it tended to establish the existence of an implied warranty of the reasonable fitness of the stoker for the particular purpose for which it was intended to serve.

Appellants knew when the sale was made for what purpose the stoker was intended. Furthermore, they were given every opportunity to remedy the defects but failed to do so.

We do not believe the appellants had a right to limit their liability by the securing of the conditional sales contract under such circumstances.

The court was fully warranted from the testimony in finding the existence of an implied warranty in this case. *Lidgerwood Mfg. Co. v. S. R. H. Robinson & Son Contracting Co.*, 183 Ill. App. 431; *Lathrop-Paulson Co. v. Perksen*, 229 Ill. App. 400.

Believing the facts in this case clearly establish that the stoker definitely failed to perform the duties for which it was purchased and that by operation of law under the particular facts in this case there existed an implied warranty that the stoker was reasonably fit for the particular purpose intended, the judgment of the circuit court of Sangamon county is affirmed.

*Affirmed.*