John Alan Appleman, Plaintiff-Appellee, v. Fabert Motors, Inc., a Corporation, Defendant-Appellant.

Gen. No. 10,348.

Third District.

May 16, 1961.

Rehearing denied June 12, 1961.

Tanner & Paterson and Arthur J. B. Showalter, of Champaign, for appellant.

John Alan Appleman and Appleman, Zimmerly & McKnelly, of Urbana, for appellee.

REYNOLDS, J.

Plaintiff bought a Lincoln Premier Automobile from the defendant corporation on May 14, 1959, paying $6,217.77 for it. At the time of purchase, defendant furnished plaintiff with the usual 1,000 and 2,000 mile inspection coupons and the customary warranty wherein and whereby the dealer warrants the automobile and each part thereof to be free under normal use and service from defects in material and workmanship for a period of ninety (90) days from date of delivery. Within a very short time after delivery plaintiff began to have trouble with the automobile. The defendant admits in its brief to servicing the car for defects in the operation of the gas gauge, door lock, speedometer, light switches, temperature gauge, wheel alignment, door squeaks, and road noises. Plaintiff testified to crashing noise when driving the car, valve trouble, vibration, a broken left rear spring, trouble when car was in reverse, tendency to veer to right, and temperature gauge trouble. Plaintiff testified that twice the car pulled to the right and he had to fight the wheel to keep the car on the road. In August 1959, on a trip to New England, the car caught on fire and burned out the wiring under the hood. The car was repaired temporarily at the place of the fire. Plaintiff's wife drove the automobile home and on the trip home, the drive shaft broke. This was replaced and

425

upon instructions from the plaintiff, plaintiff's wife took the automobile to the place of business of the defendant and left it. Later that day plaintiff's wife talked by telephone to Elwood Fabert about the automobile and told him she had returned it on instructions of her husband. She testified Fabert told her the car was a lemon and he would try and get another for her; that the matter of car colors was discussed. A day or so later plaintiff and his wife went to see Fabert. They testified that he told them he was looking for a replacement and they again talked about the car colors. At that time Fabert told them he was no longer the Lincoln dealer. Mrs. Appleman asked Fabert what that meant to them and he told them it meant absolutely nothing, that if the Lincoln people did not replace the car he would; that he would sell the old car and stand the loss. Fabert in his testimony did not dispute the conversations with plaintiff and his wife about them returning the car and demanding another, or that he made effort to obtain a replacement car for them, but does deny that he made the statement that he would replace the car if Lincoln did not, or that he would sell it and stand the loss himself. There was testimony by the plaintiff that he had been buying cars from this dealer for about ten years, and that he had consistently refused to accept the customary warranty but had told the dealer that he looked to the dealer to stand back of the cars he sold. The witness Fabert denied having heard or taking part in such a conversation or agreement. Ford Motor Company, maker of the Lincoln was called but refused to replace the automobile. It did offer to repair the car, but this the plaintiff refused, stating the car was dangerous, and that it was not reasonably fit for the purpose for which it was intended. It is not in dispute, that when the car was delivered to the defendant company on August 24, 1959, by Mrs. Appleman, it

was delivered for the purpose of finally returning it to the dealer on the ground that it was unfit. There was no further agreement or acts of the plaintiff to indicate that he would take the automobile back when repaired. Instead, he claimed breach of the implied warranty and demanded a new car. When this was not done, he brought suit on the implied warranty for the amount of the purchase price, plus expenditures for replacement of the drive shaft and towing. The matter was tried before the court and the court decreed: there was an implied warranty; the automobile was not of merchantable quality as impliedly so warranted; a rescission of the sale was made; the defendant waived a jury trial and the plaintiff was entitled to recover the original purchase price of $6,217.77 and costs of suit. Judgment was entered on the decree and the defendant appealed.

Defendant contends there was no breach of warranty and consequently no right on the part of the plaintiff to rescind the sale, and that the plaintiff had an adequate remedy at law and there was no equitable jurisdiction involved.

The first point raises the question of an implied warranty. There was no express warranty except the usual warranty against defects in workmanship and material for a period of ninety (90) days from date of sale. There was testimony that the plaintiff had talked with the dealer and its immediate predecessor and had refused to accept this usual express warranty, but had always bought his automobiles on the basis of an implied warranty that the dealer would stand behind the automobile sold. Both parties rely upon the provisions of Section 15 of Chapter 121½ Ill. Rev. Stats. (Uniform Sales Act), the plaintiff contending that under this section there is an implied warranty that merchandise, whether sold under a trade name or not, is fit for the general purposes for which it is sold

and that an automobile which is sold under a trade name carried with it an implied warranty of quality and fitness for use as an automobile. The defendant contends that the article sold, the Lincoln Premier automobile was a specified article, sold under its trade name and that there was no implied warranty as to its fitness for any particular purpose or that the article was of merchantable quality.

Section 15 Uniform Sales Act, provides:

"15. Implied warranties of quality.) 15. Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is as (an) implied warranty that the goods shall be reasonably fit for such purpose.

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.

"(3) If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed.

"(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose.

"(5) An implied warranty or condition as to quality or fitness for a particular purpose may be annexed by the usages of trade.

"(6) An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith."

Defendant relies upon the case of Santa Rosa-Vallejo Tan. Co. v. Kronauer & Co., 228 Ill. App. 236. In that case leather of a certain grade, known in the trade as BB Harness Leather was ordered. When delivered the customer complained it was not up to grade. And the court in that case held that it was a sale under a trade name and there was no implied warranty of fitness of the merchandise for any particular purpose or any implied warranty of the quality of the merchandise, other than the same might be expressed in the particular kind of goods specified. That case cited as authority the case of Peoria Grape Sugar Co. v. Turney, 175 Ill. 631, 51 N. E. 587, which involved the sale of a certain grade of coal, and in that case the court held if the contract called for a specific article under its patent or other trade name, there was no implied contract as to fitness, since the buyer got what he bargained for.

In the case of Levin v. Siver, 27 Ill. App. 2d 134, 169 N. E. 2d 156, certain equipment was sold and with the sale a Dari-Delite Freezer was leased for a term of ten years, the lessee agreeing to not use any other type of freezer. The freezer did not operate properly. There was testimony that the freezer was serviced or adjusted at least forty times within two years. The lessor brought suit for specific performance and other relief. It was denied on the ground that the machine furnished was not a workable machine, i.e. a machine fit for the use contemplated by the parties. In the case of Barnett v. Kennedy, 315 Ill. App. 28, 42 N. E. 2d 298, a stoker was sold to be used in a laundry plant. The stoker did not perform satisfactorily and the court held there was an implied warranty that the stoker was reasonably fit for the particular purpose intend-

ed. The case of J. P. Seeburg Piano Co. v. Lindner, 221 Ill. App. 94, involved the sale of an organ for use in a motion picture show, and the court held there was an implied warranty that the organ was usable for the purpose the seller knew it would be put. In the case of the freezer, the stoker or the organ, the matter of the trade or patent name is not the controlling factor. In those cases, the fact that the article was sold for a particular purpose, known to the seller, constituted or imposed an implied warranty that the article would perform the job for which is was purchased. The plaintiff here contends that the same rule applied to the purchase of the Lincoln automobile. That even though it was sold under the name of a Lincoln Premier automobile, there was an implied warranty of quality and fitness for use as an automobile. A specific article or item may be designated or known by a certain trade name. Machinery, or specific items of machinery have trade names and carry with them certain degrees of quality. An automobile is a highly complicated combination of machinery. For instance the headlamps in the automobile. If there can be an implied warranty that they will perform properly and give the necessary light, can the same implied warranty be applied to the whole of the components making up the automobile? It is the opinion of this court that it can.

In the case at bar, while the defendant by its manager Elwood Fabert testified that he was not present while the matter of the dealer standing behind the automobiles sold to the plaintiff, there was no positive denial that such conversations did not take place. It is true that the original conversation in 1950 would not bind the successor corporation, unless assumed by the successor. Fabert was a member of the defendant company in 1956 and the plaintiff's testimony would indicate that the same rule applied when he bought

automobiles in 1956, although Fabert did not remember or hear any conversations on that matter. There is testimony that the plaintiff was advised by the service man of the defendant company that the Lincoln was the safest car on the road. All this points up the theory that the plaintiff relied upon the implied warranty of the dealer that he would be buying a reliable and safe automobile. It is true that there was no implied warranty on this automobile as to its fitness for any particular purpose, but there was an implied warranty that the automobile was of merchantable quality, and that it was fitted for the usual purpose for which automobiles are used. The buyer had the right to expect reasonably trouble free transportation from this particular automobile, regardless of make or style. There was no particular purpose involved, but the general purpose of driving it from place to place, in the pursuit of his business or for pleasure.

The automobile business has been one of the leading businesses of the past half century. During that time certain practices and usages have become standard in the trade. A purchaser of a new automobile has the reasonable right to expect an automobile completely new in every respect and part, properly constructed and regulated, to provide safe, trouble free and dependable transportation. The purchaser in this case did not get such an automobile. Within a very short time be began to have trouble with the automobile. The gas gauge, door lock, speedometer, light switches, temperature gauge, wheel alignment and other minor deficiencies appeared. There was valve trouble and vibration at certain reasonable speeds. The left rear spring was found to be broken. The car tended to veer to the right off the road, so that the plaintiff had to fight the wheel to prevent being involved in a wreck. The car caught on fire, which involved danger to the plaintiff and his wife. Later, the drive shaft

broke. There were cracking noises under the car from time to time, which may have been the drive shaft before it broke. The car was what has been called "a lemon" and by some as "a dog". Its history shows that it was not a good automobile, not a safe automobile and not reasonably fit for the purpose for which it was sold and for which the plaintiff purchased it. The fact that the dealer and other dealers engaged in selling automobiles had an express warranty, which the plaintiff claimed he did not accept, does not avoid the implied warranty that the car sold to the plaintiff was of the quality and fitness necessary for use as an automobile. It would seem to this court that the words "patent or other trade name" would apply to those articles, which by the trade and name import a certain quality and fitness, such as a certain grade of a certain specified metal, a grade of grain, leather, wood or other articles. The name "Lincoln Premier" stands for a certain style of automobile. It was sold as an automobile for general use as an automobile. There was no special purpose involved.

■■ This court must sustain the findings of the chancellor that there was an implied warranty and that the automobile was not of merchantable quality as impliedly so warranted. It is realized that this opens up a broad field of litigation, but where an automobile is so unquestionably unfit for use as an automobile as the one involved here, where it developed trouble that could have injured or killed its occupants such as veering to the right or pulling to the right so that the driver had to fight the wheel to remain on the road, the unexplained fire, and the breaking drive shaft, there can be no question that it was unfit for the general purpose for which it was sold, whether sold under a trade name or otherwise. The section of the Uniform Sales Act invoked by the defendant was not enacted by the legislature to permit the seller of goods to say that because an article has

432

a trade name, whether singular or a complicated component mass of articles such as an automobile, there could be no implied warranty as to its merchantable .quality and fitness for which it was built, merchandised and purchased.

The other question involved, namely, did the plaintiff have an adequate remedy at law, or was there an equitable question involved, involves the question of rescission. The plaintiff takes one position that there was a rescission by mutual agreement. If this had been admitted by the defendant, there would have been no equitable grounds on the part of the plaintiff. But the defendant denied the rescission. Alternatively, the plaintiff asked the court to declare a rescission. That presented an equitable ground. The right of the plaintiff to plead alternative grounds is provided for in the Practice Act. (Chap. 110, Sec. 34, Ill. Rev. Stat. 1955), in the following language: "Every complaint and counterclaim shall contain specific prayers for the relief to which the pleader deems himself entitled. Relief, whether based on one or more counts, may be asked in the alternative." The right of the pleader is also set out in Section 43, (2) of the Practice Act, where it is provided that when a party is in doubt as to which of two or more statements of fact is true, he may, regardless of consistency, state them in the alternative or hypothetically in the same or different counts or defenses, whether legal or equitable.

The right of the pleader to plead alternatively is further bolstered by two recent cases. McCormick v. Kopmann, 23 Ill. App. 2d 189, 161 N. E. 2d 720; Downs v. Exchange National Bank of Chicago, 24 Ill. App. 2d 24, 163 N. E. 2d 858. Here, the plaintiff in his amended complaint set up seven counts. Count I alleged a mutual rescission of the contract and asked for the return of the purchase price plus out-of-pocket expenses. Count II alleged the automobile was not reasonably fit for use as an automobile, and asked the court to

declare a rescission of the sale. The same remedy is prayed in other counts. An order declaring a rescission of the sale involved a remedy that could only be granted by a court sitting in chancery, therefore there. was an equitable issue.

██ The trial court found there was a rescission. This was a finding of fact and this court has no right to disturb such a finding unless such finding is clearly against the weight of the evidence. The evidence as to the conversation between the plaintiff and wife and Fabert is conflicting. We cannot say the finding of the trial judge was wrong.

As to the demand of the defendant for a jury trial, this was held to be waived in the trial court. In the appeal it was not urged by the defendant and we must hold it was waived.

Since we find there was an implied warranty by the dealer, that the automobile was not of merchantable quality as impliedly warranted, and that both legal and equitable issues were involved, the judgment will be affirmed.

Judgment affirmed.

CARROLL, P. J. and ROETH, J., concur.