**Joseph Sutter, Plaintiff-Appellant, v. St. Clair Motors, Inc., Defendant-Appellee.**

**Gen. No. 63-O-24.**

Fourth District.

December 2, 1963.

Louis Beasley, of East St. Louis (Raymond J. Nester, of counsel), for appellant.

Jones, Ottesen & Fleming, all of Belleville, for appellee.

318

HOFFMAN, JUSTICE.

In this suit, the purchaser of a new automobile seeks to recover the purchase price thereof from the dealer. The plaintiff claims that the automobile was so defective that it was unfit to use, and he therefore should have his money back. The case comes to us on the pleadings.

The plaintiff alleges in his Amended Complaint that on October 17, 1957 he purchased a new Edsel automobile from the defendant dealer for the sum of $3,633.95. He states that he is a farmer, and that the car was bought for business and pleasure. He goes on to allege that the automobile was so imperfect and defective that it could not be used. Specifically, he states that on the day the automobile was delivered there was a loud knock in the motor but that the defendant's agents told him this would disappear after he had driven the auto; that he and his wife undertook to drive the auto to their home, but that while they were on the way it became inoperable; that he returned the car to the dealer and said dealer undertook to remedy the defects in order to get the automobile to operate, but that said automobile never did operate properly; that on December 9, 1957, he returned said automobile to the defendant where the defendant again undertook to correct the defects therein, and that on said date the defendant admitted that the automobile had defective parts which affected its performance, stability and reliability; that on said date the defendant installed new valve rocker arms, a new gasket, made adjustments in the distributor and timing and made other alterations.

Plaintiff goes on to allege that the automobile again refused to function and that on December 27, he returned it to the defendant where the defendant replaced two hydraulic valve lifts, 12 valve push rods,

10 valve rocker arms and adjusted the rear motor mounts, but that, and in spite of the defendant's assurances that said automobile would run properly, the loud noise in the motor continued and at times the automobile would stop on the highway.

Plaintiff further alleged that on January 6, 1958 he returned the car to the defendant, and the defendant replaced four valve push rods and two valve rocker arm-shafts, but that said automobile continued to run improperly and stopped several times on the highway and had to be towed home; that again on February 4, 1958, he returned the car to the dealer at which time the dealer replaced the camshaft, 16 hydraulic valve lifts and a number of gaskets, but the automobile still would not operate; that again on March 24, 1958, the plaintiff returned said automobile at which time the defendant replaced 16 rocker arms, the water pump, gaskets and made many other adjustments, acknowledging that the said parts were defective and imperfect, but that notwithstanding such replacements the automobile still did not operate properly. The plaintiff finally alleges that on May 26, 1958 he had the automobile towed from his home to the defendant's place of business and demanded the return of his money.

The prayer is for the return of the purchase price and for monies the plaintiff alleges he expended in endeavoring to get said automobile to properly operate.

In the pleadings, the parties set up the warranties involved in the sale and the pertinent provisions of the Uniform Sales Act which are involved.

Regarding the warranties: It is alleged that the defendant, at the time of said sale, in writing, warranted that said automobile and each and every part thereof was free, under normal use and circumstances, from defects in material and workmanship until such

320

product had been used and operated for a distance of 4,000 miles or for a period of 90 days from the date of delivery, whichever event first occurred. This warranty further provided that it was "expressly in lieu of all other warranties, express or implied, and of all other obligations or liabilities on the part of the dealer."

Concerning the Uniform Sales Act (then in force, but now superseded by the new Uniform Commercial Code): The plaintiff relies upon section 15, subsections (1) and (6). Subsection (1) reads as follows:

"(1) Where the buyer, expressly or by implications, makes known to the seller the particular purpose for which the goods are required and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is as (an) implied warranty that the goods shall be reasonably fit for such purpose."

And subsection (6) is as follows:

"(6) An express warranty or condition does not negative a warranty or condition implied under this act unless inconsistent therewith."

The defendant relies upon section 71 of said Uniform Sales Act which is as follows:

"71. Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale."

The defendant argues, in its motion to dismiss, and the court decided, that section 71 of the Sales Act barred plaintiff's right to recover upon the implied warranty arising under section 15 of the Act. From this adverse judgment, plaintiff appeals.

It is clear to us from the complaint that the plaintiff has sufficiently alleged that he made known to

the defendant the particular purpose for which the auto was being purchased and that he relied upon defendant's skill and judgment. Such being the case, an implied warranty that the auto be reasonably fit arose under section 15(1) of the Sales Act. In the following cases it has been held that there was an implied warranty that an article, similarly sold, would do the work for which it was purchased: J. P. Seeburg Piano Co. v. Lindner, 221 Ill App 94 (organ); Barnett v. Kennedy, 315 Ill App 28, 42 NE2d 298 (stoker); Levin v. Siver, 27 Ill App2d 134, 169 NE2d 156 (freezer); Appleman v. Fabert Motors, Inc., 30 Ill App2d 424, 174 NE2d 892 (automobile).

It is also clear to us that the complaint sufficiently alleges unfitness of the automobile here involved to perform its purpose.

The defense is that section 71 of the Sales Act, in view of the express warranty, nullifies the implied warranty of fitness raised by section 15 of the Act and in support of this defense Sterling-Midland Coal Co. v. Great Lakes Coal & Coke Co., 334 Ill 281, 165 NE 793, and Heller v. Franklin-Butler Motors, Inc., 259 Ill App 358, are cited. We do not regard either of these authorities to be binding upon us under the facts of this case. In the Sterling case, the contracts in question contained detailed specifications regarding the quality of the coal which was being sold and the court stated that these contracts specifically negatived the contention that there was any other understanding or agreements between the parties with respect to the coal which was the subject matter of the contracts. In the Heller case, the opinion does not disclose sufficient facts to warrant a conclusion that it constitutes authority under the facts of the instant case.

On the other hand, there are two Illinois authorities which are persuasive. In Barnett v. Kennedy, supra,

and Aschtgen v. Raffle, 11 Ill App2d 369, 137 NE2d 403, there were clauses similar to the clause contained in the express warranty in the instant case. In both of these cases it was held that such a clause did not preclude the court from upholding the implied warranty of fitness involved.

Moreover, section 15(6) of the Sales Act provides that an express warranty does not negative an implied warranty arising under the Act unless it is inconsistent therewith. We do not feel that this quoted section is in conflict with section 71 of the Act, which purports to negative such implied warranty. It is to be noted that section 71 provides that an implied obligation may be negatived by "express agreement." Clearly both sections, 15(6) and 71, require that an implied warranty cannot be negatived unless the "express agreement" is "inconsistent" with "the implied warranty." There is absolutely nothing in the express warranty in the instant case which specifically negatives the implied warranty of reasonable fitness raised by the statute or fairly brings such attempt to negative said implied warranty to the buyer's attention. We point out that this reasoning is followed in the new Commercial Code, now superseding the Sales Act, wherein it is provided that any attempt to exclude or modify an implied warranty of merchantability must use such terms, and, if in writing, must be conspicuous to the buyer. Ill Rev Stats 1961, c 26, § 2–316.

Lastly, we point out that the ancient rules of "caveat emptor" cannot always apply in today's transactions. Courts must be realistic of the world about. We would be taking a narrow view of what realistically occurs when a transaction such as the one involved here is made, if we allowed the express warranty, hidden as it was here, to protect the seller. The complexities of today's machines are far too subtle to allow a lay purchaser to deal at arm's length with a skilled merchant.

323

No longer in today's marts do we normally have people dealing on an equal caveat-emptor basis. The machine which is purchased today by the clerk or housewife from the merchant who has specialized training and carefully milled tools, is not purchased with any understanding but what it will perform what it was made to do. The attempt to negative such undertaking by an express warranty such as we have here, unless it is clearly conspicuous to the buyer and specific in its purpose is contrary to public policy. The buyer of a machine today need not beware his seller. The trend in all of our courts today is to protect a person who may properly be uninformed. Such a person is one who today buys an automobile or other complex machine sold to the general public. It would be unconscionable to say that he must have the skill necessary to know that he must reject a new car or other machine tendered for sale. It would be inequitable to require him to know that an inconspicuous general express warranty could defeat his right to have a machine that properly performed.

We hold that the express warranty set forth in the pleadings here involved did not bar the plaintiff from his implied warranty of fitness. Accordingly, the judgment order appealed from is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

CULBERTSON, P. J. and SCHEINEMAN, J., concur.