OVERLAND BOND AND INVESTMENT CORPORATION, Plaintiff-Appellee, *v.*
LEARTHURMAN HOWARD *et al.*, Defendants-Appellants.

(No. 55942;

First District—December 15, 1972.

Wallace C. Winter, of Northwest Neighborhood Legal Services, of Chicago, for appellants.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

This action was brought to recover a deficiency balance allegedly due after default on a retail installment contract for the purchase of an automobile which was returned to the seller and subsequently resold. The installment contract was assigned by the seller to plaintiff, who stipulated that the buyers could assert all defenses against plaintiff.

The trial court, sitting without a jury, found that defendants were entitled to total credits of $770.52, leaving a balance of $877.28 due to plaintiff, less $100 deducted by plaintiff from that amount for brake repairs, plus $92.01 in attorney's fees; and entered an order confirming judgment by confession for $869.29 plus court costs. From that order defendants appeal.

Although the testimony concerning exact dates is somewhat confused, the record discloses that on June 28, 1970, defendants signed a retail installment contract with Car Credit Corporation, an automobile dealer, for the purchase of a 1965 Oldsmobile for $1,470. The contract provided for a down payment of $200, which defendants paid, leaving an unpaid balance of $1,270 plus a finance charge of $177.80 to be paid in 12 monthly installments of $120.65 beginning July 30, 1970. The deferred payment price, including the down payment, was $1,647.80.

Defendant Learthurman Howard (hereafter "defendant"), also signed a statement written in his own handwriting which declared that he understood there was a 30-day, 100 per cent guarantee on the block, transmission and rear end and a 30-day 50 per cent guarantee on everything else.

At the time of the purchase, defendant informed the salesman for the dealer that he was a salesman and that his job required him to have the daily use of a car.

On the morning after defendant purchased the car, he started to drive to work and the car overheated. He stopped at a service station, put water in it, and had the oil checked. He went about 15 miles further and the transmission fell out while on the Eisenhower Expressway. He called Car Credit Corporation, told them what had happened, and had the car towed in to be repaired. Defendant testified that for nine days he returned to the dealer to see if his car had been fixed, and each time received assurances that someone would "get to it." About 6:00 P.M. on the ninth day, the car was fixed. According to his testimony, "right after

[he] got it out of the shop," the gas line clogged up and had to be fixed.

About a week later, between 4:00 and 4:30 P.M., he was coming home from work on the Dan Ryan Expressway when the brakes went out at 39th Street. The car rolled to a stop and he had it towed to the dealer once again. The dealer informed him that the brakes would be repaired, but after visiting the shop almost every day for three weeks, no work had been done.

Defendant thereupon informed two salesmen and the credit manager that at that time he was cancelling the contract and revoking his acceptance of the automobile.

On September 9, 1970, plaintiff, assignee of the dealer, mailed defendant a notice of resale, and on September 20, 1970, sold the automobile at auction for $500.

On January 13, 1971, the court entered the judgment in question.

■■ Defendants-appellants have filed an extensive brief, as well as a motion for default against appellee for failure to appear in this court. In *Daley v. Jack's Tivoli Liquor Lounge, Inc.*, 118 Ill.App.2d 264, 254 N.E.2d 814, we discussed the propriety of reversing a case for failure of appellee to file briefs, and concluded that a reviewing court should not reverse a trial court judgment except after consideration of the merits of the appeal. Therefore, the motion for *pro forma* reversal is denied and we turn to a consideration of the merits of the appeal.

■■ Section 2—314 of the Uniform Commercial Code (Ill. Rev. Stat. 1969, ch. 26, par. 2—314(1)), creates an implied warranty of merchantability (unless excluded or modified), in a contract of sale "if the seller is a merchant with respect to goods of that kind * * *." To be merchantable, goods "must at least be such as * * * are fit for the ordinary purposes for which such goods are used." Section 2—314 makes no specific distinction between new and used articles the sales of which give rise to implied warranties, although the official comments state that "A contract for the sale of second hand goods, however, involves only such obligation as is appropriate to such goods for that is their contract description." (Uniform Commercial Code Comment SHA, ch. 26, par. 2—314, p. 232 (1963).) Thus, such a contract obligation may create a warranty of merchantability in the sale of a used automobile.*

---

* Recognition of the existence of implied warranties in the sale of new and used motor vehicles in Illinois is demonstrated by Ill. Rev. Stat. 1969, ch. 121½, par. 262L.

262L. *Retail sale of motor vehicles*

Any retail sale of a motor vehicle made after January 1, 1968 to a consumer by a new motor vehicle dealer or used motor vehicle dealer within the meaning of Chapter 5 of the Illinois Motor Vehicle Law is made subject to this Section.

(See *Chamberlain v. Bob Matick Chevrolet, Inc.*, 4 Conn. Cir. 685, 239 A.2d 42; *Stickney v. Fairfield's Motors, Inc.*, 9 UCC Reporter 236.) We find in this case that when the seller (a merchant with respect to auto-

---

(a) The dealer is liable to the purchasing consumer for the following share of the cost of the repair of Power Train components for a period of 30 days from date of delivery, unless such repairs have become necessary by abuse, negligence, or collision. The burden of establishing that a claim for repairs is not within this Section shall be on the selling dealer. The dealer's share of such repair costs is:

(1) in the case of a motor vehicle which is not more than 2 years old, 50%;

(2) in the case of a motor vehicle which is 2 or more, but less than 3 years old, 25%;

(3) in the case of a motor vehicle which is 3 or more, but less than 4 years old, 10%; and

(4) in the case of a motor vehicle which is 4 or more years old, none.

(b) Notwithstanding the foregoing, such a dealer and a purchasing consumer may negotiate a sale and purchase that is not subject to this Section if there is stamped on any purchase order, contract, agreement, or other instrument to be signed by the consumer as a part of that transaction, in at least 10-point bold type immediately above the signature line, the following:

"THIS VEHICLE IS SOLD AS IS WITH NO WARRANTY
AS TO MECHANICAL CONDITION"

(c) As used in this Section, "Power Train components" means the engine block, head, all internal engine parts, oil pan and gaskets, water pump, intake manifold, transmission, and all internal transmission parts, torque converter, drive shaft, universal joints, rear axle and all rear axle internal parts, and rear wheel bearings.

(d) The repair liability means that the dealer will make necessary Power Train component repairs in his shop, or in the shop of his service affiliate, on the basis of his regular list price charge for parts and labor, where the flat rate list price does not exceed 50% of the selling price of the vehicle at the time repairs are requested.

(e) The age of the vehicle shall be measured according to the manufacturer's model year designation as shown on the Certificate of Title or Registration Certificate. Vehicles shall be designated as current year models, one year old, 2 years old, and so forth according to the time that has elapsed since January 1 of the appropriate model year so designated.

(f) This Section does not preclude the issuance of a warranty or guarantee by a motor vehicle dealer or motor car manufacturer that meets or exceeds the basic provisions of paragraph (a).

Any person who violates this Section commits an unlawful practice within the meaning of this Act.

The limitation of this statute to vehicles 4 years old or less does not mean that buyers of cars older than that are not protected by any implied warranties of merchantability or fitness. Rather, under the statute, the burden is on the seller to show that the claim for repairs is outside the statute. However, we believe the burden shifts to the buyer of a motor vehicle 4 or more years old (as in the present case) who must then assume the burden of proving that seller has breached his warranties and thereby assert his remaining rights under appropriate sections of the Uniform Commercial Code.

Also, it should be noted that even though automobile brakes are not Power Train components warranted by this Act, they are covered by the inclusive provisions of Sections 2—314 and 3—315 infra.

mobiles) delivered to the buyers a vehicle in "good" condition, warranties attached which were similar in character to those which attach to the sale of new cars. An appropriate implied warranty of merchantability was created by the contract for this "good" used car which entitled defendants to revoke their obligations under the contract when the warranties were found to have been breached.

■■ Defects which have been held to make operation of a new automobile unfit and thereby cause a breach of implied warranties may result in the breach of the same warranties on a used automobile. See *Appleman v. Fabert Motors, Inc.*, 30 Ill.App.2d 424, 174 N.E.2d 892, a case arising under the Uniform Sales Act where the court held that a buyer had the right to expect reasonably trouble-free transportation from his recently purchased car. (See also *Berg v. Stromme*, 79 Wash.2d 184, 484 P.2d 380.) Fitness for the ordinary purpose of driving implies that the vehicle should be in a safe condition and substantially free of defects. It should be obvious that any car without an adequate transmission and proper brakes is not fit for the ordinary purpose of driving. Any other conclusion would entitle unscrupulous sellers to foist inherently dangerous and potentially worthless vehicles on unwary consumers and thereby avoid the obvious intent of the statute.

Even if Section 2—314 were held inapplicable to used car sales, Section 2—315 (Ill. Rev. Stat. 1969, ch. 26, par. 2—315), states that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

■■ An implied warranty of fitness for a particular purpose in the case of second-hand goods predates the adoption of the Uniform Commercial Code and has been continued by Section 2—315. (See *Markman v. Hallbeck*, 206 Ill.App. 465.) In other jurisdictions, courts have held that there is an implied warranty of fitness for a particular purpose which may be breached when an automobile dealer sells a used car or truck which is not fit for its intended use. *Brown v. Hall* (Fla. 1969), 221 So.2d 454; *Green v. Northeast Motor Co.* (D.C. Mun. Ct. 1961), 166 A.2d 923; *Goepfert v. Town Motors Automotive Co.* (Pa. 1951), 1 Bucks 134.

■■ In the present case, defendant testified that he informed the salesman for the dealer that he [defendant] was a salesman who needed his car for business purposes. We are aware that all cars need transmissions and brakes in order to function for the general purpose of driving. However, we believe the dealer was also charged with creating an implied warranty of fitness for a particular purpose when he learned that defen-

dant was dependent on his car for his livelihood. Knowing this, and knowing that defendant was relying on the dealer's skill and judgment in selecting a suitable car for him, an implied warranty arose as a matter of law. *Green v. Northeast Motor Co.* (D.C. Mun. Ct. 1961), 166 A.2d 923; see *Berg v. Stromme,* 79 Wash.2d 184, 484 P.2d 380.

Defendants also argue that an implied warranty of merchantability may accompany the sale of a used automobile if the retail installment contract does not contain a conspicuous disclaimer mentioning merchantability, an acknowledgment of examination by the buyer, or expressions like "as is" or "with all faults."

The retail installment contract which defendants signed contained the following provision in two lines of small print on the top of the first side between the names of both buyers and seller and the description of the purchased automobile.

> "Seller hereby sells and Buyer or Buyers, jointly and severally, hereby purchase the following motor vehicle with accessories and equipment thereon for the deferred payment price and on the terms set forth in this contract. Buyer acknowledges delivery and acceptance of said motor vehicle in good condition."

On the back side of the contract, in smaller print which is the same size as seven additional agreements of the buyer on the same side of the contract, is the following provision:

> "This contract contains all of the agreements of the parties relative to the retail installment sale, and no representations, promises, statements or warranties, express or implied, have been made by seller unless contained herein or imposed by law."

Despite these fine print provisions, defendants argue that the implied warranty of merchantability was not excluded in the contract for the sale of the used automobile to defendants.

Counsel for plaintiff admitted, in his final argument at trial, that there was no disclaimer of warranties in the contract for sale of the automobile. We agree. Yet a closer comparison between the contract and the statutory language is valuable on this point.

Ill. Rev. Stat. 1969, ch. 26, par. 2—316(2), provides:

> "(2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in the case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'

356

(3) Notwithstanding subsection (2)

(a) unless circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and

(b) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; * * *."

■■ First, to exclude an implied warranty of merchantability, the language used must mention merchantability and be conspicuous. No such language appears in the present contract even among the fine print, so we agree with counsel that no exclusion was included by the seller who drafted the agreement, in spite of the provision in the contract which is similar to that mentioned in subsection (2) above.

■■ Second, the expression "as is" or "with all faults" is absent from this contract. Rather, the contract stated that "[B]uyer acknowledges delivery and acceptance of said motor vehicle in good condition." The acknowledgment was part of a printed form contract prepared by the seller which may have been an obscure attempt by seller to disclaim his implied warranties within the agreement. Printed disclaimers of warranties in form contracts are not favored by the courts and should be strictly construed against the seller. (*Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc.*, 68 Ill.App.2d 297, 216 N.E.2d 282. *Berg v. Stromme*, 79 Wash.2d 184, 484 P.2d 380.) In *First National Bank of Elgin v. Husted, Jr.*, 57 Ill.App.2d 277, 205 N.E.2d 780, the court found that the sentence, "Buyer acknowledges delivery, examination and acceptance of said car in its *present* condition," (emphasis added) was sufficient to inform the buyer of seller's exclusion of all implied warranties. (*Contra, Hull-Dobbs, Inc. v. Mallicoat*, 57 Tenn.App. 100, 415 S.W.2d 344.) We believe acceptance of an automobile in its "present" condition is significantly different from acceptance of a car in "good" condition. The term, "present condition," we agree, is like "as is" and "with all faults," since those terms make no direct assertion that the vehicle is qualitatively either good or bad, but, instead, imply a warning to the buyer that he may be purchasing a car in its present condition with whatever faults it may possess. On the other hand, to state that a vehicle is in "good condition" at the time of delivery does not, in our opinion, call the buyer's attention to the exclusion of any warranties, but simply seeks to reassure the buyer that the car he is purchasing is a "good" one.

Third, there is nothing in the record to indicate that defendants test-drove the car before the purchase or were given the opportunity to do so and refused. Furthermore, there is no reason to believe that the substantial defect which made itself manifest after a number of miles of driving on the first day after purchase would, or, by a layman, could have been discovered through an examination of the car by defendants on the day of purchase.

■■ Similarly, to exclude or modify implied warranties of fitness for a particular purpose, the exclusion must be evidenced by writing and also be conspicuous. Rather than being conspicuous, the statement in the present contract acknowledging buyers' receipt of the car in good condition is printed on the first page near the top in small print between larger type listing the names of buyers and seller and the description of the car. Even if the wording of the phrase itself were a sufficient disclaimer (which we believe it is not), its size and location are not so conspicuous as to satisfy the statute. See *Zabriskie Chevrolet, Inc. v. Smith*, 99 N.J. Super. 441, 240 A.2d 195.

Next, defendants argue that a dealer of used automobiles cannot negate implied warranties by claiming that a separate express warranty exists which supersedes all others when the contract excludes all express warranties which are not contained in the contract.

■■ At trial, counsel for plaintiff placed into evidence a separate undated statement written by defendant but unsigned by either the dealer or his agents, which stated:

> "I understand that 100 per cent, 30 day guarantee on cracked block bad transmission and rear end and 50 per cent on anything else. L. D. Howard.'"

Referring again to the provision on the back of the contract which said that the form contract contained all agreements relative to the sale and that no representations, promises, statements or warranties were made unless contained in the form contract or were imposed by law, it is clear that the independent statement of defendant Howard, standing alone, cannot invalidate the implied warranties of the prior agreement. In addition, Ill. Rev. Stat. 1969, ch. 26, par. 2—313(1)(a), provides for the creation of express warranties by the seller through:

> "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain * * *."

Yet the writing which plaintiff alleges created the express warranty in the instant case was written by L. D. Howard, not by the seller, and was not signed by the seller or his agents. Thus, there is no proof that the statement was ever made by the seller, would be enforceable against him,

or became part of the basis for the bargain as required by the statute. See *Keller v. Flynn,* 346 Ill.App. 499, 105 N.E.2d 532.

In *Sutter v. St. Clair Motors, Inc.,* 44 Ill.App.2d 318, 194 N.E.2d 674, a case arising under the Uniform Sales Act, the court held that where there was an express warranty which was in lieu of all others expressed or implied but not inconsistent with them, it would not deprive the buyer of his implied warranty of fitness for purposes intended. See also *Green v. Northeast Motor Co.* (D.C. Mun. Ct.), 166 A.2d 923.

Therefore, since we have determined that neither the implied warranty of merchantability nor the implied warranty of fitness for a particular purpose was excluded or modified, each is implied in defendants' contract. Ill. Rev. Stat. 1969, ch. 26, pars, 2—314 and 2—315.

Next, defendants argue that the failure of the automobile's brakes after it had been in their possession for one week (after repair of the transmission drop-out) constitutes a breach of an implied warranty of merchantability, and that sufficient notice of breach was given to the dealer when defendants returned the automobile for brake repair which was not accomplished after three weeks.

The record discloses that the transmission fell out of defendants' car the day after they purchased it. One week after they took possession of the car for the second time, defendant testified that "the brakes went out." on the Dan Ryan Expressway and that he had the car towed back to the dealer. He further testified that on the night the car was towed in, he told the night watchman that the brakes had failed and that he was leaving the car to be repaired. The following day, he told another of the dealer's employees that the brakes needed repair and was assured the work would be done. Every day for three weeks he came back to check with the mechanic and every day he talked to his own lawyer. The mechanic kept telling him, "maybe tomorrow, or the next day or this evening." Edward Bass, president of Car Credit Corporation, the dealer, testified that he did not know that there was anything wrong with the car when it was returned the second time. We infer the contrary, however, since he admitted knowing that a towing service had brought the car in to his lot.

█ Ill. Rev. Stat. 1969, ch. 26, par. 2—607(3)(a), provides for the notification of the seller that a breach of warranty has occurred.

> "(a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

There are no particular words which must be used to constitute an adequate form of notice. (See *Wainwright v. Elgin Windmill Co.,* 9 Ill. App.2d 574, 134 N.E.2d 44, and Uniform Commercial Code Comment

SHA, ch. 26, par. 2—607, p. 454 (1963).) Certainly, by having the car towed to the dealer's place of business, by informing its employees that the car was again in need of major repair, thus clearly implying that it could not be operated in a safe manner until such repairs were completed, was sufficient notice to the dealer that its implied warranties had been breached.

■■ Defendants next maintain that the defective brakes substantially impaired the value of the automobile and thereby gave defendants the right to revoke their acceptance after waiting three weeks for the dealer to make repairs which were never made.

Ill. Rev. Stat. 1969, ch. 26, par. 2—608, provides in part:

> "(1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>> (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
>> (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."

It is not every breach of warranty which will entitle a buyer to revoke his acceptance and each case must be considered on its own merits to determine if there has been a substantial impairment of value. (*Tigar Motor Co. v. McMurtry*, 204 Ala. 283, 224 So.2d 638.) There comes a time, however, when major problems continue to plague an automobile, that most people would agree a particular car cannot be repaired or parts replaced to make it free of defect. *General Motors Corp. v. Ernst*, 279 Ala, 299, 184 So.2d 811.

■■ The dollar value of repairs need not be compared to the overall price of the article to determine a percentage appraisal of impairment; rather, courts must look to the effect the impairment has on the user. *Campbell v. Pollack*, 101 R.I. 223, 221 A.2d 615.

In *Zabriskie Chevrolet, Inc. v. Smith*, 99 N.J. Super. 441, 240 A.2d 195, the court permitted the buyer to revoke his acceptance when it was shown that the transmission of a new car was so defective that it would only drive in low gear, thereby substantially impairing the value of the contract.

In *Tigar Motor Co. v. McMurtry*, 204 Ala. 283, 224 So.2d 638, a new car was returned more than 30 times in the first year for repairs, consumed an excessive amount of gas and oil, and was never adequately repaired. The court found the contract substantially impaired and approved the buyer's revocation. See *Orange Motors of Coral Gables, Inc. v. Dade County Dairies, Inc.*, 258 So.2d 319.

■■■■ From the facts of this case, there can be little doubt that defendants' car, after having had the transmission fall out, and then experiencing a complete failure of the brakes (both dangerous occurrences while defendant was travelling on an expressway), was so hazardous to drive that the value of defendants' contract for the car was substantially impaired. A consideration of the different defects and their substantial effect on defendants' car leads us to conclude that the revocation was entirely proper and justified since the buyers received unfulfilled assurances that the defects would be cured and also because of the practical impossibility of initial discovery of the defects by the buyers. Once a person's faith is shaken in such a major investment as an automobile, "the vehicle loses not only its real value in their eyes, but becomes an instrument whose integrity is substantially impaired and whose operation is fraught with apprehension." *Zabriskie Chevrolet, Inc. v. Smith*, 99 N.J. Super. 441, 240 A.2d 195.

Ill. Rev. Stat. 1969, ch. 26, par. 2—608(2), declares:

> "(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it."

By waiting three weeks for the dealer to repair the brakes and then notifying two salesmen and the credit manager of their revocation of acceptance, defendants fully complied with the statute. A buyer need not give up his car for indefinite periods of time to allow the seller to attempt compliance with the implied warranties. (*Orange Motors of Coral Gables, Inc. v. Dade County Dairies, Inc.*, 258 So.2d 319; *General Motors Corp. v. Ernst*, 279 Ala. 299, 184 So.2d 811.) Furthermore, there is no evidence that the seller ever attempted to cure the defect by repairing the faulty brakes. Coupled with the other problems defendants had with the car which resulted in their actual possession of it for only seven days during about six weeks, we believe their revocation was timely and reasonable. See *Tigar Motor Co. v. McMurtry*, 204 Ala 283, 224 So.2d 638.

The judgment of the trial court is reversed.

Judgment reversed.

LORENZ, P. J., and DRUCKER, J., concur.