HARRY L. MCDONALD, et al,, *Plaintiff in Error*, vs. OLA SANDERS, et al., *Defendants in Error*.

137 So. 122.

En Banc.

Opinion filed October 14, 1931.

Petition for rehearing denied November 9, 1931.

*Parkinson & Riegle,* for Plaintiffs in Error;
*R. H. Rowe,* for Defendants in Error.
ANDREWS, Commissioner:—Plaintiffs in error brought

suit on seven promissory notes aggregating $2625.00, executed by the defendants to plaintiffs in part payment for a second-hand steam shovel, title to which to remain in vendors until all notes were paid. No question was raised as to the sufficiency of the declaration.

The defendants filed certain pleas to plaintiff's declaration, all of which were disposed of either by motion to strike, demurrer or affirmative charge to the jury, except the first amended plea which set forth in substance that the notes were given as part payment of the purchase price of a second-hand steam shovel sold by plaintiffs to defendants; that the shovel was warranted by plaintiffs to be equipped with $1500.00 worth of new parts, in good repair and running order capable of performing the work in the quarry and suitable therefor; that in truth and fact the shovel so delivered was not equipped with $1500.00 worth of new parts, was not in running order, nor in good repair, and stating in what particulars; that it was not capable of performing the work required and was utterly worthless for the purpose intended; that defendants within a reasonable time offered to return said machine to plaintiffs because the same was not as warranted and represented, and that by reason of the premises the consideration for the several notes had failed, wherefore defendants demand judgment that the cause of action be dismissed and that they recover their costs, etc. Issue was joined upon the above plea and upon same being submitted to a jury a verdict was returned in favor of defendants upon which judgment was entered that plaintiffs take nothing by their suit and that defendants recover their costs.

The signed order of defendants for the shovel introduced in evidence shows that the shovel was described as "complete and in working condition."

The briefs filed herein argue to considerable extent as to whether the issues and proofs developed by the whole case show that defendants based their defense upon a

rescission of the contract of purchase or upon a mere "failure of consideration" for the notes sued upon. It appears that the issues raised by the first plea, on which the jury rendered a verdict, was one of failure of consideration and not based upon a rescission of contract.

The shovel was shipped from near Branford, Fla., for delivery to defendants at Sumterville in Sumter County where it arrived about September 14, 1925. On that date Sanders & Fraleigh wired plaintiffs McDonald and Burgman that

"Shovel here not one we bought. Will not unload until you come. Wire Thompson. Wire us when to expect you."

On the same day McDonald wired defendants from Jacksonville that he could

"furnish affidavit that shovel shipped you is the one that you looked at and that repairs stated were made on it stop I will be in Sarasota, Watrus Hotel, Wednesday and Thursday. Wire further advice there."

On the next day, September 15, 1925, defendants wired McDonald that

"There is not one single new piece on this machine will not unload until you come. Bring your man that examined shovel. Wire if you will come today."

On the same day, September 15, McDonald answered from Jacksonville that

"Utterly impossible for me to come to Coleman before Saturday. Am some uncertain as to that date as I am leaving for Sarasota tonight to attend opening machinery bids stop shovel is positively as represented by Thompson and I strongly advise your accepting."

It seems to be undisputed that the shovel was to have $1500.00 worth of new parts and repairs placed in it before delivery to defendants, and was to be in "good workable condition." If the shovel was "positively as represented" it would necessarily have about $1500.00 worth of new parts placed in it and be in "good workable condition."

Defendant Sanders testified that upon receiving the above-last telegram that he felt "that Mack would stand behind it with his guarantee," and he had the shovel unloaded after obtaining the bill of lading from the bank at Coleman and paying $1500.00 of the purchase price and delivering the eight notes of $375.00 each as the balance of the purchase price.

Defendant Sanders in charge of operations testified that the shovel never did do the work and that McDonald after investigating the shovel's performance offered to give purchasers a credit memorandum of $400.00 with which defendants could build the machine up to where it would do the work which defendants refused. The evidence shows that a special mechanic was procured from Ocala to put the shovel in good workable condition at the joint expense of plaintiffs and defendants but it appears that the effort was not successful. Sanders further testified that a little later he had a conversation with McDonald in which he tried to get him to accept this shovel in part payment on a new shovel that would work as their road building job was a short time contract and if he would not that the "deal was off" and he would have to take the shovel and he would get one from somewhere else; that they "did not use the machine after that;" that he got very little satisfaction out of McDonald and he did not take the shovel back. The witness further testified that he refused to sign the contract or order for the machine unless it contained a provision that they would guarantee the shovel to be in suitable condition to do the work. The contract for the shovel introduced in evidence, signed by Sanders & Fraleigh, describes "1 used Marion Steam Shovel Complete and in Good Working Condition with Street Plates."

There was other evidence before the jury in support of also against the above contentions; but where the evidence is relevant and material to the issue being tried, the jury

are the exclusive judges of the weight of such evidence as well as the credibility of the witnesses.

But the main contentions of plaintiff are that the defendants accepted the shovel and made the cash payment and later paid the first monthly instalment note of $375.00; accepted plaintiffs' offer of a mechanic to make certain repairs on the shovel; that defendants used it for over three months, and that therefore defendants would be estopped to cancel or rescind the contract or refuse to make further payments of the notes.

It may reasonably be assumed from the contents of the telegram exchanged between plaintiffs and defendants before the shovel was unloaded at Sumterville that there is not shown an unqualified acceptance of the shovel by defendants. In fact it is shown that it was unloaded only after McDonald wired that the "shovel is positively as represented by Thompson and I strongly advise your accepting."

It seems quite clear from the evidence that the machine was represented to have $1500.00 worth of new parts installed, and in fact the order for the machine called for the machine to be "complete and in good working condition." It is also shown that the wire to which the above-quoted telegram was a reply stated that "There is not one single new piece on this machine. Will not unload until you come. Bring your man that examined shovel. Wire if you will come today."

The testimony is undisputed as to the condition of the machine after it was unloaded and while moving it to the quarry.

While it is true that

"As a general rule a contemporaneous oral warranty cannot be ingrafted on a written contract or bill of sale which on its face purports to evidence the entire agreement of the parties, irrespective of whether it is silent on the matter of warranties or not." (23 R. C. L. 1399, Sec. 224)

yet in the instant case the contract for the purchase of the machine contained the provision that it was "in good working condition" which made any testimony relative to its "good workable condition" admissible and relevant.

The fact that a contract of sale is in writing does not necessarily exclude warranties that may be implied by law; and where the alleged verbal warranty sought to be established is only what would be implied, evidence thereof does not change the legal effect of the contract and is therefore admissible. 23 R. C. L. 1402, Sec. 227.

Attention has been directed by plaintiffs to what appears to be the general rule that there is no "implied" warranty as to the condition, adaption, fitness, or suitability for the purpose for which made, or the quality of an article sold as and for a "second-hand article." (24 R. C. L. 170, Sec. 444). There may be an express warranty of an article though sold as and for a second-hand one. 42 C. J. 781, 782; Fairbanks Steam Shovel Co. v. Holt, 79 Wash. 261, 140 Pac. 394, L. R. A.. 1915 B 477, notes. In the instant case there is undisputed evidence of both a written and verbal assurance that the machine was in good workable condition.

In fact the rule seems to be that where the machinery is such that it must be used before the quality can be ascertained, if not being apparent from examination, it is the right of the buyer to make such use of the machine as may be necessary to determine the quality, and that such use does not deprive him of his right to rescind for breach of warranty. See notes 26 L. R. A. (N.S.) 469; 24 R. C. L. 294, Sec. 577. Where there has been a total or partial payment of the purchase price by the buyer the buyer may not be required to show an unconditional return of the property as a prerequisite to rescinding the purchase where the seller has refused to accept the buyer's offer to return. See 24 R. C. L. 295; Noel v. Garford Motor Truck Co., 111 Wash. 650, 191 Pac. 828.

In the case of Heathcote v. Fairbanks, Morse & Co., 60 Fla. 97, 53 So. 950, this Court held that:

> "In an action at law brought to recover the balance of the purchase price for a certain gasoline engine and materials, a plea which avers in substance that the plaintiff, through its agent made certain specified representations concerning the machinery in question, by reason whereof the defendant was induced to purchase the same, that such representations turned out to be untrue, so that the machinery could not be used for the purpose for which it was purchased, wherefore the consideration had wholly failed, constitutes a good defense to the action as against a ground of demurrer that such 'plea does not show any failure of consideration on the alleged contract sued on,' and a demurrer on such ground is improperly sustained thereto."

An examination of the pleadings and circumstances in the above case will disclose very similar issues to those presented in the instant case and the holdings thereon may fairly illustrate the attitude of this Court on such sales where it is represented by the seller that the machine will do the work, and whereby actual tests made it was found unfit for the purpose for which the purchase was made.

In the case of Mizelle v. Watson, 57 Fla. 111, 49 So. 149, cited by plaintiffs in error there was no dispute in reference to the circumstances under which the plaintiff claimed the right to rescind the contract and it was held that

> "Where the facts are not disputed the question of what is a reasonable time in which to rescind a contract of sale is a question for the Court to decide,"

Also that

> "Whether an offer to rescind a sale of chattels and return them to the seller was made within a reasonable time, is, in general, a question of fact for the jury."

In the instant case the facts were in dispute as to whether defendants offered to return the shovel to plaintiffs and the trial court sustained the verdict which appears to have ample support in the evidence adduced at trial. But

whether or not defendants offered to return, or did return, the shovel to plaintiffs are not controlling in this case. In fact, the trial court eliminated all of defendants' pleas except the first which does not seek in terms a return of the payments already made by defendant but merely sets up a failure of consideration for the notes sued upon.

The plea of defendants is not one for rescission of contract. As a general rule the right to rescind must be exercised *in toto* unless the contract is a divisible one; in fact the very idea of rescinding a contract implies that what has been parted with shall be restored on both sides; hence the general rule is that a party who rescinds an agreement must place the opposite party *in status quo*. 6 R. C. L. 939 Sec. 318-319.

The rule on that issue seems to be that where a return is refused or is rendered impossible by the other party, that to show a return is not necessary. 6 R. C. L. 939.

The plea upon which issue was joined and tried does not come within the purview of one asking for a rescission and a return of the cash payments to defendants and a return of the machine to plaintiffs. The pleas of that nature were eliminated by the trial court.

The jury having by their verdict found that plaintiffs were not entitled to recover upon the notes and the same having been approved by the trial court the judgment should be affirmed, and it is so ordered.

Affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered, and adjudged by the Court that the judgment of the court below be, and the same is hereby, affirmed.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.