188 So.2d 48 (1966)
Charles A. ENIX, Appellant,
v.
DIAMOND T. SALES & SERVICE CO., a Florida Corporation, Appellee.
No. 5771.
District Court of Appeal of Florida. Second District.
June 15, 1966.
Rehearing Denied July 18, 1966.
*49 P.B. Howell, Jr., Leesburg, for appellant.
Walter Warren, Leesburg, for appellee.
PIERCE, Judge.
This case involves the question of express and implied warranties in the sale of second hand personal property.
On October 21, 1963, Diamond T. Sales & Service Co., a Florida corporation, sold to Charles A. Enix a used 1961 Diamond T tractor for $12,652.50, taking as part payment therefor a used 1958 Mack truck-tractor at an agreed trade-in value of $3,500.00, which cash difference of $9,152.50, together with $2,005.70 premium on insurance coverage, a finance charge of $1,676.85, and documentary stamp purchase of $19.35, left a total net balance due from Enix to Diamond T of $12,854.40, even after the Mack Truck had changed hands. This amount of $12,854.40 was to be paid off by Enix to Diamond T in thirty monthly installments of $428.48, beginning December 4, 1963. The deal was evidenced by a written contract of sale, which contained no express written warranty of condition, fitness, quality, etc., of the Diamond T tractor.
Upon taking over possession, Enix was immediately dissatisfied with his purchase because allegedly it was not in the condition or quality as had been represented. Numerous efforts were made during the ensuing few weeks by Enix to get the truck-tractor repaired by Diamond T or otherwise to put it in working condition, but his efforts were not successful. Enix did not make the first two monthly payments on the contract, whereupon Diamond T, on January 31, 1964, filed replevin proceedings in the Lake County Circuit Court and re-took possession of the Diamond T tractor.
Enix filed answer, the gist of which was that Diamond T at the time of the purchase had "represented and warranted" to Enix that the vehicle was in good operating condition and would fulfill Enix's needs; that Diamond T had full knowledge that Enix depended upon said tractor as his sole source of livelihood in his business of long-distance hauling; that it was necessary for said tractor to be in workable operating condition at all times for such use; that after taking possession of the tractor, Enix soon discovered that it was not as had been represented to him by Diamond T; that specifically the front end needed a complete overhaul and the gear box was defective; that because of several mechanical defects the consumption of oil was unreasonably great; that the cab was loose on its frame; and that the torsion bars or radius rods on the tandem were worn out and impossible to keep aligned. Enix further alleged in his answer that on October 26, 1963 (5 days after the deal was closed), he took the tractor to a repair shop in Leesburg, Florida, at his own expense in an attempt to have the front wheels aligned and balanced and brake shoes and linings installed; that between October 21, 1964 and January 20, 1964 he took said tractor to Diamond T's shop at Orlando on at least six different occasions so that Diamond T could put the vehicle in good repair as it had "promised and warranted" to do, to no avail; that because of the defective operating condition of the tractor and the time and expense consumed in the attempted repairs Enix had been prevented from making at least 7 long distance hauling trips he otherwise would have made, thus rendering it financially impossible for him to make the initial monthly payments under the purchase contract. Enix also filed counterclaim based generally upon the foregoing facts, asking damages in "excess of $10,000.00." Diamond *50 T answered the counterclaim, denying the material averments thereof, denying that any express warranty was given to Enix "in connection with his purchase of said truck-tractor," and alleging that "under the law of the State of Florida an oral warranty as to the condition of second hand machinery is invalid."
Thereafter, at a pre-trial conference, and without any further proceedings of record, the Circuit Judge entered his "FINAL SUMMARY JUDGMENT," which, because its content is of significance in the disposition of this appeal, is set forth as follows:
"FINAL SUMMARY JUDGMENT
"This cause having come on at pre-trial conference on August 18, 1964, before the Court and defendant appearing by his attorney, P.B. Howell, Jr., and plaintiff appearing by its attorney, Walter Warren, and the Court having read the pleadings on file in said cause, having heard the arguments of respective counsel, and being advised in the premises, and the Court finding nothing to contradict that the subject matter involved herein is second hand machinery, and that the law is that there is no implied warranty on second hand articles (McDonald v. Sanders, 103 Fla. 93, 137 So. 122 (1931).
"It is hereby ORDERED, CONSIDERED and ADJUDGED that plaintiff have and plaintiff is hereby given judgment for the possession of a certain used 1961 Diamond T Tractor, Model No. 931 CNT, Serial No. 931 CNT-0346, Motor No. NTO-6B-288790 and for costs in the amount of $144.50."
The Court had nothing before it except the formal statutory replevin papers, the answer and counterclaim aforesaid of Enix, and the answer to said counterclaim; together with the original purchase contract, and a letter written from Diamond T to Enix dated January 24, 1964, which somehow found their way to become a part of the lower Court's rather weird record and proceedings.
We think the able Circuit Judge was in error, both in his ruling on the merits and in the procedure followed in reaching it, fatal as to the former, not necessarily as to the latter.
The basic premise upon which the Summary Judgment was entered, namely, that there was no warranty on the used Diamond T tractor, is not borne out by the record, and also the conclusion of law arrived at by the Circuit Judge, "that there is no implied warranty on second hand articles" is likewise unwarranted, even under the case cited.
Taking these matters in reverse order, the case of McDonald v. Sanders, 103 Fla. 93, 137 So. 122, is not binding authority for the legal proposition mentioned. In the McDonald case the article involved was a second hand steam shovel and there were both verbal and written warranties that such machine was in "good workable condition." In that case, as here, the seller McDonald had brought suit to recover the past-due deferred payments upon the steam shovel, and the purchaser Sanders had defended upon an alleged breach of warranty as to the operating condition and good repair of the machine in question. The defendant purchaser prevailed in the Circuit Court, and the Supreme Court in affirming used the following language (text 137 So. 125):
"The testimony is undisputed as to the condition of the machine after it was unloaded, and while moving it to the quarry.
"While it is true that
"`As a general rule a contemporaneous oral warranty cannot be ingrafted on a written contract or bill of sale which on its face purports to evidence the entire agreement of the parties, irrespective of whether it is silent on the matter of warranties or not.' 23 R.C.L. 1399, § 224,  yet in the instant case the contract *51 for the purchase of the machine contained the provision that it was `in good working condition,' which made any testimony relative to its `good workable condition' admissible and relevant.
"The fact that a contract of sale is in writing does not necessarily exclude warranties that may be implied by law; and where the alleged verbal warranty sought to be established is only what would be implied, evidence thereof does not change the legal effect of the contract, and is therefore admissible. 23 R.C.L. 1402, § 227."
Then immediately comes the language in McDonald which was apparently the basis for the reliance upon that case by the Circuit Judge here:
"Attention has been directed by plaintiffs to what appears to be the general rule that there is no `implied' warranty as to the condition, adaption, fitness, or suitability for the purpose for which made, or the quality of an article sold as and for a `second-hand article.' 24 R.C.L. 170, § 444."
But immediately following the last quoted language, the opinion neutralized the same as judicial precedent, in the following:
"* * * In the instant case, there is undisputed evidence of both a written and verbal assurances that the machine was in good workable condition." (Emphasis supplied).
Thus there was no implied warranty involved in the McDonald case; there were express warranties involved, both written and oral.
It follows that the allusion to implied warranties in the McDonald opinion was mere obiter dicta and as such would be without force as legal precedent. In this connection, it would be well to heed the lengthy admonition of Justice Whitfield in Ex Parte Amos, 1927, 93 Fla. 5, 112 So. 289, text 294, the sum and substance of which is that "general statements of law in an opinion must be given such weight only as the facts in that particular case warrant." See also Booth v. Mary Carter Paint Company, Fla.App. 1966, 182 So.2d 292.
Aside from the point of obiter dicta, it is doubtful if McDonald, supra, would be reliable authority, in the light of other Florida cases on the general subject, for the proposition that implied warranties do not cover second hand articles.
In Carter v. Hector Supply Co., Fla. 1961, 128 So.2d 390, breach of a warranty for fitness of a riding sulky was involved, and the Supreme Court held as follows (text 128 So.2d 391):
"Perhaps in its judicial incipiency the rule of liability on implied warranty was grounded in some measure on the law covering deceit and therefore assumed the complexion of a tort action. However, it is now generally agreed that the implication of a warranty arises out of a contractual relationship. Williston, Sales, Rev. Ed. Section 197; 46 Am.Jur., Sales, Section 332; 77 C.J.S. Sales § 302 and § 325."
And in Posey v. Ford Motor Company, Fla.App. 1961, 128 So.2d 149, breach of a warranty for suitability for use as a general farm tractor was involved, and in that case the Court said in the first headnote:
"Complaint of tractor buyer that manufacturer and dealer each represented that tractor was well constructed, was suitable for use as a general farm tractor, that buyer was thereby induced to purchase it, and that such warranties were breached to injury of buyer, did state a cause of action."
In Smith v. Burdine's, Inc., 144 Fla. 500, 198 So. 223, 131 A.L.R. 115, the Supreme Court said, quoting from Mariash on Sales, pages 324, 325, Par. 119:
"* * * Where a buyer makes known to the seller the particular purpose for which he buys and relies upon the seller's *52 skill or judgment, a warranty of fitness for purpose arises. * * *" (Emphasis supplied).
And, in quoting from Williston on Sales, 2nd Ed. Vol. 1, pp. 457-459, par. 235, the opinion in Smith proceeds:
"* * * The warranty of merchantability is not the only warranty that may be implied on the sale of goods. Where the buyer buys goods for a particular purpose a warranty is sometimes implied that the goods shall be fit for that purpose. * * *
"It should be noticed also that fitness for a particular purpose may be merely the equivalent of merchantability. Thus the particular purpose for which a reaping machine is generally designed is reaping. If it will not fulfill this purpose it is not merchantable. * * *"
And, the opinion in Smith also cites and quotes from Berger v. E. Berger & Co., 76 Fla. 503, 80 So. 296, which quotes from Benjamin on Sales, (5th Ed.) 595, as follows:
"* * * An implied warranty, or as it is called, a covenant in law as distinguished from an express contract or express warranty, really is in all cases founded on the presumed intention of the parties and upon reason. The implication which the law draws from what must obviously have been the intention of the parties the law draws with the object of giving efficacy to the transaction and preventing such a failure of consideration as cannot have been within the contemplation of either side. In business transactions what the law desires to effect by the implication is to give such business efficacy to the transaction as must have been intended at all events by both parties, who are business men; not to impose on one side all the perils of the transaction or to emancipate one side from all the chances of failure, but to make each party promise in law as much, at all events, as it must have been in the contemplation of both parties that he should be responsible for in respect of those perils or chances."
When the seller knows the purpose for which the buyer buys an article and that he is relying upon the seller's skill and judgment, an implied warranty of fitness for which the article is purchased arises as a matter of law. Wagner v. Mars, Inc., Fla.App. 1964, 166 So.2d 673. Atlantic Distributors, Inc. v. Alson Mfg. Co., Fla. App. 1962, 141 So.2d 305. And the basis of liability on a breach of implied warranty of fitness is the agreement, imposed by law, to be responsible in the event the thing sold is not in fact fit for the use and purposes intended. Arcade Steam Laundry v. Bass, Fla.App. 1964, 159 So.2d 915.
The foregoing cases uniformly make no distinction between whether the goods or articles involved are new or used. Research discloses no reported Florida case where an implied warranty specifically covers used second hand articles. But the broad scope and sweep of the language used in the quoted cases, supra, indicate that the judicial philosophy underlying the holdings therein expressed would include second hand articles as well as new and unused articles.
And such philosophy might well have been inherent in the adoption by the 1965 Florida Legislature of Chapter 65-254, approved June 3, 1965, effective January 1, 1967, known as the "Uniform Commercial Code," a comprehensive code covering practically all commercial transactions in personal property, tangible and intangible. While we do not rely here, as we need not, upon the Uniform Commercial Code as authority, because not yet in force, it is significant that said code makes no distinction between new and used articles in dealing comprehensibly with implied warranties. (See General Laws of Florida, 1965, c. 65-254, § 672.2-201 et seq.).
In the absence of previous applicable statute law, the modern vast complexities of commercial transactions would probably impel case-made law favoring implied warranties *53 in the sale of second hand goods, if and when the point should be squarely presented. The advent of the Uniform Commercial Code in Florida renders this prospectively unnecessary, so we make no specific pronouncement on the point.
But the instant case does not depend for decision upon the narrow sphere of an implied warranty of fitness. Enix's answer in the replevin action avers 
"That at the time of said purchase, as aforesaid, Plaintiff (Diamond T) represented and warranted to Defendant (Enix) that said truck-tractor, as described in said Complaint, was in good operating condition and would fulfill Defendant's needs of which Plaintiff, its agents, officers and employees were fully aware." (Emphasis supplied).
Nowhere in the record before this Court does it appear whether said warranty so alleged was express or implied. If it be assumed that the warranty was implied, the authorities hereinbefore cited would apply; and if it be assumed that such warranty was express, then the rule enunciated in McDonald v. Sanders, supra, would apply.
It is axiomatic that before a summary judgment is entered, all factual doubts must be resolved against the party in whose favor it is entered. Wallens v. Lichtenstein, Fla.App. 1964, 159 So.2d 912; Humphrys v. Jarrell, Fla.App. 1958, 104 So.2d 404. In the absence of anything in the record to the contrary, this would compel the assumption that the warranty relied upon by Enix was express.
This assumption is given added impetus by a letter dated January 24th, 1964, from Diamond T to Enix, wherein the significant language is used:
"[You] have brought your truck into us several times for repairs to be made under the warranty * * *" (Emphasis supplied)
as to which letter Diamond T in its Brief filed here observes, "[It] is unfortunate that the word `warranty' mistakenly appears in the letter, * * *." Also in the margin of the letter appended to said Brief appears the handwritten notation "very unfortunate language," which letter was obviously taken from Diamond T's office files. While the Brief goes on to neutralize said "unfortunate language" by contending that the same constituted "only an offer" of a "subsequent warranty" which was not based "on a new consideration," it cannot be explained away quite that easily. It is not apparent from the letter as a whole that the writer had in mind any new warranty; on the other hand, it is more consonant with logic that it refers to a previous warranty. Certainly an issue as to warranty is raised. It follows that the summary judgment appealed from must be reversed.
The Rules (Rule 1.36, R.C.P., 30 F.S.A.) contemplate that a motion for summary judgment or decree must be filed and served upon the adverse party; that not less than 20 days therefrom a hearing is held, at which the pleadings in the case, sworn affidavits, depositions, interrogatories and answers thereto, admissions, etc., previously filed or taken, are considered by the Court; and that if the Court at such hearing finds from the pleadings and the evidence before it that there is no genuine issue as to any material fact, then a summary judgment or decree may be entered as a matter of law. See City of Pinellas Park v. Cross-State Utilities Co., Fla.App. 1965, 176 So.2d 384; John K. Brennan Co. v. Central Bank & Trust Co., Fla.App. 1964, 164 So.2d 525; Seven-up Bottling Co. of Miami v. George Const. Corp., Fla.App. 1964, 166 So.2d 155.
In the instant case such procedural requirements were honored more in the breach than in the observance. It appears that the Court held a pre-trial conference, and "heard the arguments of respective counsel," and was "advised in the premises." It may well be that respective counsel then and there stipulated informally that, upon the basis of the conceded fact that the case *54 involved "second hand machinery," the Court could proceed to entry of summary judgment as the Court deemed the law to be. If such was the case, the record should have been made to so appear.
But we do not hold the lower Court in fatal error because of the procedural irregularities, upon the well-known principle that all inferences are indulged in support of the judgment entered, and that the burden is always upon the party appealing to clearly demonstrate reversible error.
We would, however, suggest a somewhat closer adherence to the procedural processes laid down by the rules, which are designed not alone for the protection of the litigants but also for the benefit of the Court. After all, we have passed out of the horse and buggy era of procedure and have progressed well into the streamlined processes of the diesel age, but we have not yet gotten completely off terra firma into the supersonic mode of practice.
Because of the error in entering the Final Summary Judgment on the merits, the cause is reversed and remanded, with instructions that further proceedings herein be had in the lower Court not inconsistent herewith.
Reversed and remanded.
ALLEN, C.J., concurs.
LOVE, WILLIAM K., Associate Judge, concurs specially with opinion.
LOVE, WILLIAM K., Associate Judge (concurring specially).
I concur in the reversal of the summary judgment entered in the lower court as it affirmatively appears from the record that there was an issue as to the existence of an express warranty of condition; or an implied warranty as to fitness of the second-hand vehicle. I am constrained to record my opinion that the majority opinion may be construed as a reversal of the principle that generally, no implied warranty of condition, adaption, fitness or quality exists in the sale of second-hand articles. This expression of the Court in McDonald v. Sanders, albeit obiter dicta, appears to be the general and better reasoned rule. See 77 C.J.S. Sales § 330 p. 1199, and Hursh  American Law of Products Liability 3:25. There are recognized exceptions in such instances as where the buyer makes known to the seller the purpose for which he buys and relies upon the seller's skill or judgment.