193 So.2d 694 (1967)
John J. KEATING, Appellant,
v.
William A. DeARMENT, Appellee.
No. 5154.
District Court of Appeal of Florida. Second District.
January 18, 1967.
*695 John W. Stanford, of English, McCaughan & O'Bryan, Fort Lauderdale, for appellant.
Eugene L. Heinrich, of McCune, Hiaasen, Crum & Ferris, Fort Lauderdale, for appellee.
DYKES, ROGER F., Associate Judge.
This case comes on appeal from a final judgment of the Court of Record, in and for Broward County, Florida, granting to the plaintiff money damages in the sum of $8,725.49 plus interest and costs. The cause was tried before the court without a jury. Plaintiff was the purchaser of a nine-year-old forty-two foot yacht which he acquired by purchase from the defendant in the early summer of 1962 and used through that summer. Approximately four months later, when the vessel was placed in dry-dock for the Fall, it was discovered that there were extensive areas of rotted wood, all of which were replaced by plaintiff during the ensuing winter, and in March of 1963, plaintiff received a repair bill of $8,725.49. The following September, plaintiff brought suit against defendant praying damages in the sum of $8,725.49 plus interest and costs, alleging in the first count of his complaint that a breach of warranty had occurred, and alleging in the second count charges of fraud and deceit. At the conclusion of the evidence the court ruled for the plaintiff on count I of the complaint, the cause of action for breach of warranty, and dismissed count II of the complaint, the cause of action for fraud and deceit, entering judgment against the defendant in the amount of $8,725.49.
The defendant, appellant, brings this appeal.
The only evidence relied upon to support a warranty obligation from the defendant-seller to the plaintiff-purchaser was contained in a letter written on April 24, 1962, addressed to a Mr. D.E. Freeland, commencing, "Here is the information you requested on my yacht `Skipper.'" Freeland was an uncle of plaintiff who had had considerable experience with boats, plaintiff having had none, and sometime in March, 1962, Freeland met defendant while they were each having repair work done on their respective boats. In conversation at that time Freeland informed defendant that his nephew was looking for a boat of the same size and description as defendant's boat, and Freeland inquired of defendant as to whether he would consider selling his boat. Defendant indicated that he would consider it and a tentative sales price of $15,000 was discussed. Subsequently, Freeland requested defendant, by letter or long distance telephone, to furnish him complete details on the boat, and in response thereto defendant wrote Freeland the letter dated April 24, 1962, giving a description of the boat and all of its equipment. After extensive listing of the equipment and furnishings on the boat, defendant stated, "This vessel is in perfect shape as she is my Pride and Joy." It is upon this statement that the warranty obligation is founded in the complaint.
Prior to this transaction, defendant had never known Freeland and up to this time, defendant had never met plaintiff. Freeland turned the letter over to plaintiff, and subsequently, in July of 1962, when defendant was in Atlantic City, New Jersey, on a summer trip with his boat, Freeland and plaintiff traveled there to examine the boat. Both plaintiff and Freeland inspected the boat and took a cruise with defendant, following which plaintiff telephoned a man experienced in boat maintenance and operation, Mr. Jack McAllister, and sought advice from McAllister about the boat. McAllister suggested insurance coverage on the boat and arranged for an insurance inspection to be made. The insurance company sent a surveyor to examine the boat, and defendant agreed to cover any expense involved in making the boat comply with the requirements of the insurance survey. Defendant and plaintiff thereupon made an agreement as to delivery of the boat by defendant to Erie, Pennsylvania, and plaintiff *696 agreed immediately to return home and forward defendant a deposit in the amount of $5,000, the balance of $10,000 to be paid upon delivery of the boat in Erie. After delivery in Erie, Pennsylvania, defendant took plaintiff on a shake-down cruise. The insurance survey disclosed some required changes or modifications and the parties agreed upon the cost thereof which was paid by defendant. The transaction was finally consummated on July 18, 1962, and the boat was used by plaintiff extensively from July through the remainder of the summer until early October of that year. The boat was nine years old at the time of the sale.
In November of 1962, the boat was hauled out of the water for winter storage, and at that time, McAllister, who operated the boatyard where plaintiff kept the boat, made certain recommendations after going over the boat with regard to winter maintenance work. He determined that there was "considerable dry rot" and recommended that plaintiff acquire a complete survey of the vessel by a competent surveyor. McAllister employed a Mr. Bengt Bjalme, with whom he had worked almost exclusively for a number of years, to survey the boat. The report of the survey, dated November 17, 1962, indicated existence of rot. Following this, McAllister submitted to the plaintiff a lengthy repair order; and plaintiff, without obtaining other advice, authorized substantial portions of the work. Upon completion of that work, McAllister submitted a bill to plaintiff in the amount of $8,725.49, which was paid by plaintiff and which thereafter became the amount of the claim for damages by plaintiff against defendant.
We find that the language quoted, "This vessel is in perfect shape as she is my Pride and Joy," when viewed in the context of the letter and in the light of all the surrounding circumstances, was not sufficient to establish a warranty, either express or implied. While there is some force to the argument that the letter was not actually a part of the negotiation which culminated in the sale, but was preliminary thereto, that it was not directed to the purchaser-plaintiff, and that it was substantially prior in time to any communication first passing between the seller and the purchaser, thus asserting in effect that there was no privity of contract relating the parties of this suit to the parties to the letter, nevertheless, we do not ground our decision on that aspect.
More important, it appears to us, is the fact that the parties were dealing with respect to a nine-year-old boat. Even though the plaintiff admittedly was inexperienced in boats, yet the parties were dealing at arm's length and even a nonexpert must be held to have known that a nine-year-old vessel could not be "perfect." With respect to second-hand articles of personal property, generally the rule is that there is no implied warranty as to the condition, fitness or quality of the article 28 Florida Jurisprudence, "Sales," Section 147, page 407. To support liability upon the contractual warranty the purchaser must have relied thereon, and in addition thereto his reliance must have been justified under the circumstances. The principle is stated at 77 C.J.S. Sales § 310e, page 1143, as follows:
"In order that an affirmation may constitute a warranty, it must be received by the buyer as a statement of fact with respect to the property and be relied on as such in making the purchase, that is, the affirmation asserted as a warranty must have been operative in causing the sale and must have been understood by the buyer as being intended as part of the contract. * * * A statement does not constitute a warranty unless the buyer is justified in relying on it as a statement of fact as distinguished from an opinion. * * *" (Emphasis added).
It could hardly be said that the purchaser was justified in relying upon language that the nine-year-old boat was "perfect." To hold otherwise and to apply a proper measure of damages, it would be necessary to *697 award the plaintiff-purchaser the difference between the price paid and the value of a perfect boat  yet the parties did not deal in a new article
The other principle which seems to be applicable in characterizing the language used by the seller-defendant in this case is that which states that affirmations which merely express the seller's opinion, belief or judgment, do not constitute a warranty, and a seller may indulge in puffing or praise of the goods without becoming liable under warranty. 77 C.J.S. Sales § 310c, page 1140. Lambert v. Sistrunk, Fla., 58 So.2d 434. In this instance the words "Pride and Joy" may be considered as modifying the words just preceding, so as to characterize the language as trade talk, or sales talk.
Finally, it is apparent that the plaintiff-purchaser did not place his reliance upon the language contained in the letter to Freeland of April 24th. Instead, the weight of the evidence appears to show that the plaintiff relied upon the judgment of his uncle, Freeland, at the time of the inspection of the boat in Atlantic City, relied upon the recommendation obtained from McAllister and upon the results of the insurance survey made prior to the purchase. The fact that the parties renegotiated one aspect of the transaction when the insurance survey indicated the need for certain repairs, with the defendant agreeing to pay the expense thereof, further strengthens the conclusion that the plaintiff was induced to proceed with the purchase by the matters of direct negotiation between himself and the defendant, and that he did not rely upon the language contained in the letter to Freeland.
Based upon the foregoing considerations, it is our view that the judgment of the lower court was in error and that the cause should be remanded for the entry of judgment in behalf of the defendant.
It is so ordered.
SHANNON, Acting C.J., concurs.
LILES, J., concurs specially with opinion.
LILES, Justice (concurring specially).
I concur in the reversal of the judgment of the lower court and agree that no warranty, express or implied as to fitness, prevailed. I only disagree with the statement that the general rule is that second hand articles of personal property carry no implied warranty as to condition, fitness or quality of the article. That is to say, there can in certain instances be implied warranty as to second hand items of personal property. See, Enix v. Diamond T. Sales & Service Co., 188 So.2d 48 (D.C.A.Fla. 1966).