221 So.2d 454 (1969)
Jessie D. BROWN, Appellant,
v.
W.H. HALL D/B/a Hall's Truck Sales, Appellee.
No. 68-261.
District Court of Appeal of Florida. Second District.
April 18, 1969.
*455 L.C. Schowe, of Riley, Davis, Schowe & Saltsman, St. Petersburg, for appellant.
Lucius M. Dyal, Jr., of Shackleford, Farrior, Stallings & Evans, Tampa, for appellee.
PIERCE, Acting Chief Judge.
Appellant Jessie D. Brown, plaintiff in the lower Court, appeals to this Court from a final order of the Pinellas County Circuit Court dismissing with prejudice the remaining Amended Count I of his complaint against appellee W.H. Hall, d/b/a Hall's Truck Sales, defendant below, after the Court had previously dismissed Amended Count II of his complaint. The appeal brings here the propriety of the orders dismissing both Amended Count II and Amended Count I of plaintiff's complaint.
The sole substantial question presented to this Court for decision is whether or not, prior to the effective date of the Uniform Commercial Code, an implied warranty as to condition, fitness or quality with respect to second-hand articles or personal property existed in this State, and particularly as to third persons not in privity to the original purchase.
Plaintiff Brown's original complaint alleged substantially the following:
On March 20, 1965, one Raymond L. Scott purchased a used 1960 model truck from defendant Hall. On March 29, 1965, nine days later, plaintiff Brown, an employee of Bob Lee's, Inc. Service Station, in answer to a telephone call from Scott, went out to where the truck was parked for purpose of changing the left rear inside tandem wheel and tire on the truck. In removing the lock nuts, the plaintiff-employee was injured when the wheel and tire suddenly and without warning flew against him, allegedly as a result of a bent or defective rim and snap or lock ring.
It was alleged that because of such defects "the wheel and tire could not be attached to the rim of the truck with the lock nuts tightened unless the tire was initially deflated"; that "said defects created an outward compression of great force by the wheel and tire assembly being pressed against the lock nuts"; that said mechanically defective condition of the truck was the proximate cause of plaintiff's injury; and that defendant Hall, as the seller of the truck to Scott, was charged with knowledge of such "imminently dangerous agency or condition" and was therefore liable.
Count I of Brown's complaint was grounded upon Hall's negligence in selling the truck with such alleged defects. Count II was grounded upon breach of implied warranty as to condition and fitness of the truck, based upon the facts aforesaid.
Defendant Hall moved to dismiss both counts of the complaint for failing to state a cause of action. Upon hearing, the Court denied the motion to dismiss Count I (negligence), and granted the motion as to Count II (breach of implied warranty).
*456 Some ten months later, plaintiff Brown filed motion to be allowed to "reinstate" Count II of the complaint, based upon an interim decision of this 2nd District Court, Enix v. Diamond T. Sales & Service Co., Fla.App. 1966, 188 So.2d 48, which motion was denied. Plaintiff then moved to amend Count II, which was granted, so as to allege in substance that when Scott bought the truck from Hall, Scott informed Hall of the following facts: (a) the specific purpose for which Scott intended to use the truck, (b) the price range which Scott could afford to pay for the truck, and (c) the "safe and operable condition which he desired" in the mechanical and component parts of the truck; that Hall thereupon selected and sold to Scott the truck purporting to fill such qualifications; that Scott bought the truck relying upon Hall's "selection" of the truck; that Hall thereby impliedly warranted Scott that the condition of the truck was not "inherently dangerous and defective"; that Hall breached the implied warranty under the facts of the injury previously alleged; and that "said warranty was extended to and is available to the plaintiff".
Thereafter, defendant Hall moved to dismiss Count II as so amended upon the ground that it still did not state a cause of action. In due course this motion to dismiss was denied upon authority of the Enix case, supra.
Defendant Hall then moved for rehearing which, by order entered March 28, 1967, was granted, and thereupon motion to dismiss amended Count II was granted and the cause dismissed with prejudice, upon the later authority of Keating v. De Arment, Fla.App. 1967, 193 So.2d 694. Plaintiff Brown thereafter, conceding that he would be unable to establish actionable negligence, voluntarily moved to dismiss amended Count I, which was accordingly dismissed by order entered on April 9, 1968. It is from this latter order that the instant appeal was taken, but the crux of the case is the sufficiency of amended Count II based upon implied warranty.
From the foregoing chronology of the pleadings filed and orders entered, it is readily apparent that confusion existed in the lower Court as to the exact legal status of an implied warranty as to condition, fitness and quality in the sale of used personal property. And it is also apparent that, and perhaps understandably so, that such uncertainty derived from two decisions by this 2nd District Court, namely, the Enix case and the Keating case, supra.
We say "understandably" because a cursory reading of the two opinions would lead to a reasonable conclusion that they laid down conflicting doctrines, namely, that in Enix we held there was an implied warranty for fitness, etc., in second-hand goods, while in Keating there was no such implied warranty. Also it might well be presumed that, inasmuch as the Keating opinion was handed down on January 18, 1967, while the Enix opinion was handed down on June 15, 1966, Keating was meant to overrule Enix. This would seemingly account for the disparity of Circuit Court orders in the instant case  the order of February 27, 1967 denying defendant Hall's motion to dismiss plaintiff's amended Count II based upon Enix and the order of March 28, 1967 granting rehearing and dismissing amended Count II based upon Keating.
A bit of explanatory background in the evolution of the two opinions might be enlightening. In Keating the final judgment of March 12, 1964 was appealed to this Court on May 11, 1964, briefs of the parties were filed, and oral argument was held here on June 23, 1965. In Enix final judgment of the Circuit Court of October 6, 1964 was appealed to this Court on December 2, 1964, and after briefs of the parties were filed, oral argument was had here on February 25, 1966. In other words, the Keating case had been submitted to this Court for decision over eight months before the Enix case was so submitted.
But the opinion in Enix was released on June 15, 1966, while the opinion in Keating was not released until January 18, 1967. In *457 other words, there was an interval of almost nineteen months between submission of the case in Keating and the filing of opinion therein; and during that time oral argument had been held, the case submitted, and opinion filed, in Enix. The writer of the instant opinion authored the opinion in Enix, but no member of that panel had sat on Keating, and of course when Enix was released it was not known what the disposition of Keating would be. In fact, no member of the Enix panel had any knowledge of the Keating case.
Actually, however, a close analysis of the two opinions reveals no irreconcilable conflict on the fundamental issue involved, which is whether there is any implied warranty as to fitness, condition and quality in the sale of second-hand goods, and if so under what circumstances. The answer to this question is contained in the following quotation from Enix (text 188 So.2d 52):
"When the seller knows the purpose for which the buyer buys an article and that he is relying upon the seller's skill and judgment, an implied warranty of fitness for which the article is purchased arises as a matter of law. Wagner v. Mars, Inc., Fla.App. 1964, 166 So.2d 673. Atlantic Distributors, Inc. v. Alson Mfg. Co., Fla.App. 1962, 141 So.2d 305. And the basis of liability on a breach of implied warranty of fitness is the agreement, imposed by law, to be responsible in the event the thing sold is not in fact fit for the use and purposes intended. Arcade Steam Laundry v. Bass, Fla.App. 1964, 159 So.2d 915."
The opinion in Keating, when read and considered as a whole, presents no fundamental departure from the foregoing quoted doctrine. In fact, a specially concurring opinion in Keating says:
"I concur in the reversal of the judgment of the lower court and agree that no warranty, express or implied as to fitness, prevailed. I only disagree with the statement that the general rule is that second hand articles of personal property carry no implied warranty as to condition, fitness or quality of the article. That is to say, there can in certain instances be implied warranty as to second hand items of personal property. See, Enix v. Diamond T. Sales & Service Co., 188 So.2d 48 (D.C.A.Fla. 1966)."
But if any isolated statements in Keating, or language taken out of context, may be considered as deviating from the quoted language of Enix, supra, such may be considered as being herewith overruled. The philosophy of the foregoing Enix quotation is the guiding rule in this jurisdiction.[1]
Having determined the legal yardstick applicable at that time to a sale of used or second-hand goods, it is incumbent upon us to weigh the facts in light of the law. The factual situation at that time, as developed by the pleadings, was substantially the following: In March, 1965, Hall sold a dump truck to Scott; a few days later Scott called a service station to send a repair man to change the inside tandem wheel and tire on the left rear of the truck; that in response thereto the service station sent one of its employees, Brown, to service the truck; that pursuant thereto Brown removed the lock nuts, whereupon the wheel and tire suddenly and without warning "flew" against Brown injuring him seriously; that the accident happened because *458 the wheel and tire were allegedly assembled to the truck with the lock nuts so tightened and the tire so inflated that an outward compression of great force was created causing the wheel and tire assembly to, in a sense, explode outwardly upon and against any person such as Brown attempting to remove the wheel and tire, such condition being aided by a bent or defective rim and snap or lock ring being utilized to secure the wheel and tire on the truck; that Hall had a legal duty to sell the truck to Scott without such dangerous defect about which Hall knew, or should have known; that when the sale was made Scott had apprised Hall of the specific purpose for which he intended to use the truck, the price range he could afford to pay, and the operable condition he desired in the mechanical parts of the truck, and relied upon Hall's judgment in the selection of the particular truck; and that in making the sale an implied warranty existed from Hall to Scott as to fitness, quality, and condition of the truck, and such implied warranty was breached by the defective condition later disclosed, which caused Brown's injuries.
The foregoing facts bring this case squarely within the rule of Enix hereinbefore enunciated. When Hall knew the purpose for which Scott was buying the truck and knew that Scott was relying upon Hall's skill and judgment in selection of the truck, an implied warranty arose as a matter of law that the truck so sold was in fact fit and in condition for the purpose intended. We are, of course, assuming existence of the facts set forth in plaintiff's pleadings, which the motions to dismiss admitted. Upon such pleaded facts an implied warranty of fitness and condition existed.
But such implied warranty extended no further than the purchaser Scott. Warranties, as relates to sales, are strictly contractual in nature. This is so, whether the warranty is express or implied. If express it is contained in the written contract or oral affirmation. If implied it arises by operation of law, provided of course the additional facts exist as set forth in Enix, supra.
The test is one of privity of contract, and appears to have been settled by the Supreme Court, as to persons other than the parties to the original contract, in Carter v. Hector Supply Co., Fla. 1961, 128 So.2d 390. In that case a local School Board bought from Hector, a retailer, a mechanical attachment for lawn mowers known as a riding sulky with bucket type seats and pneumatic tires. After it was in use for several months, Carter, who was a school employee, was injured when the frame of the sulky broke while he was using it, allegedly caused because of faulty design of the machine itself. Carter sued Hector, claiming a breach of implied warranty of fitness. A jury verdict for Carter was reversed by the 3rd District Court, Hector Supply Co. v. Carter, Fla.App. 1960, 122 So.2d 22. On certiorari the Supreme Court held that liability under an implied warranty of fitness could not be imposed upon Hector, the dealer, in behalf of Carter, who was a third party to the original sale. Numerous Florida cases were reviewed and it was noted that liability upon an implied warranty was generally upheld where "privity of contract was present". Quoting from 46 Am.Jur., Sales, Sec. 810, the opinion in Carter observed that 
"* * * warranties do not run with personal property. Accordingly, it has been held that the buyer's tenant, the buyer's employee, or a member of the buyer's family who is injured through the article sold cannot base his action against the seller on an express or implied warranty." (Emphasis supplied).
Certainly an employee of a third person independently contracting with a purchaser to perform repair service upon the article in question, as was plaintiff Brown in the case sub judice, is no less remote from being in privity with the original *459 seller than would be the tenant or employee or member of the family of the purchaser.
The Supreme Court in Carter summarizes its holding by stating that 
"* * * one who is not in privity with a retailer has no action against him for breach of an implied warranty, except in situations involving foodstuffs or perhaps dangerous instrumentalities,[2] a problem not presently here. This is the rule for the reason that a warranty is essentially an aspect of a contractual relationship and will not generally be implied absent such a relationship between the parties. Unless one of the stated exceptions exists the injured user of a commodity who is not in privity with the retailer, is relegated to an action for negligence which in turn requires allegation and proof of fault as distinguished from the absolute liability of an implied warranty. Cf., Restatement, Torts, Sec. 402 (1948 Supplement)."
In Odum v. Gulf Tire and Supply Company, U.S.D.C.Fla. 1961, 196 F. Supp. 35, the Federal District Court for the Northern District of Florida had a case wherein plaintiff Odum "brought action against defendants to recover for injuries allegedly sustained when a tire which he was mounting exploded". The tire had been delivered to the employer of plaintiff Odum. Suit was brought against the manufacturer and also the local distributor of the tire. Holding that the warranty against latent defects did not exist in behalf of the employee Odum, the Court said 
"Since it is clear that plaintiff was not a purchaser of the tire, he is not entitled to any warranties to which a purchaser may have been entitled. There is no contractual relationship, hence no privity of contract. Carter v. Hector Supply Co., Fla. 1961, 128 So.2d 390."
It follows from what has been hereinbefore said that, while the Circuit Court in the instant case erroneously held that no implied warranty of fitness existed in the case of second-hand goods, the consequent dismissal of the case with prejudice was a correct determination because plaintiff Brown had no standing to claim damages against the original seller based upon implied warranty to the purchaser. The orders dismissing amended Counts I and II of the complaint were therefore proper and the case is affirmed.
Affirmed.
MANN and McNULTY, JJ., concur.
NOTES
[1] It is to be understood that the instant case must be ruled by the law applicable to implied warranties which existed prior to January 1, 1967, the effective date of the Uniform Commercial Code, Ch. 671-680. But it is significant to note that under the existing Code no distinction is made between new and used articles in dealing comprehensibly with implied warranties. And F.S. § 672.2-315, F.S.A. uses language strikingly parallel with the above quotation from Enix as follows:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is * * * an implied warranty that the goods shall be fit for such purpose."
[2] While an automobile as such is sometimes loosely referred to as "a dangerous instrumentality" per se, actually it is only when it is being "operated on the public highways" that it becomes such. This is implicit in the pilot case of Southern Cotton Oil Co. v. Anderson, 1920, 80 Fla. 441, 86 So. 629, 16 A.L.R. 255, and the many cases stemming therefrom.