384 A.2d 968

**Daniel L. ROUPP, Plaintiff-Appellee,**

**v.**

**George ACOR, t/d/b/a Acor Truck Sales &
Service, Defendant-Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1976.

Decided April 13, 1978.

Anthony D. Miele, Williamsport, for defendant-appellant.

Peter T. Campana, Williamsport, for plaintiff-appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

This appeal challenges the lower court's finding that appellant breached the implied warranties of merchantability (U.C.C. § 2–314, 12A P.S. § 2–314) and fitness for a particular purpose (U.C.C. § 2–315, 12A P.S. § 2–315) relative to the sale of a used truck. Finding no error we affirm.

On August 15, 1974, plaintiff-appellee purchased a 1967 Diamond Reo truck from appellant for the sum of $8,699.42. Prior to purchase appellee informed appellant he was seek-

ing a truck that had enough power to use in his timber hauling business. Appellee further advised appellant that he wanted a rebuilt truck which would be dependable for three years. After rejecting the first truck shown to him, appellee agreed to purchase the 1967 Diamond Reo which was specifically represented to have, inter alia, a completely rebuilt engine. On January 24, 1975, while appellee was transporting a load of timber, the truck lost virtually all of its power. Appellee immediately turned the engine off and left the truck in the middle of a steep highway until it could be towed. A subsequent examination of the engine, which had been in use for only 6100 miles since purchased by appellee, revealed that the bearings had seized fast to the crankshaft rendering the engine permanently useless. Testimony established that this damage was due to a lack of oil in the bearings which was caused by either improper maintenance on appellee's part, or because of inherent defects in the engine itself. As a result of the engine's breakdown, appellee suffered certain damages. including more than $3,000.00 for the purchase of a new engine. Following a bench trial, the court below concluded that appellant had breached the implied warranties of merchantability and fitness for a particular purpose. Accordingly, judgment was entered in favor of the appellee in the amount of $3,843.07. This appeal followed.

Appellant's sole contention is that no implied warranties arose when appellee purchased the truck and, alternatively, if the warranties did arise their existence terminated because of the use to which the truck was put while in appellee's possession.

Section 2–314 of the Uniform Commercial Code (12A P.S. § 2–314) provides that a warranty of merchantability is implied in a contract of sale (unless excluded or modified) "if the seller is a merchant with respect to goods of that kind." Moreover, to be merchantable, the goods "must be at least such as . . . are fit for the ordinary purposes for which such goods are used . . .." It is significant that the U.C.C. draws no distinction between new

and used articles in either of the implied warranty sections at issue. The official comments to § 2–314 simply state in Paragraph 3 that: "A contract for the sale of second-hand goods, however, involves only such obligation as is appropriate to such goods for that is their contract description." Therefore, we hold that an implied warranty of merchantability may apply to the sale of a used motor vehicle. A similar result has been reached in several other jurisdictions. See, e. g., *Rose v. Epley Motor Sales,* 288 N.C. 53, 215 S.E.2d 573 (1975); *Overland Bond and Investment Corp. v. Howard,* 9 Ill.App.3d 348, 292 N.E.2d 168 (1972); *Brown v. Hall,* 221 So.2d 454 (Fla.App.1969); *Chamberlin v. Bob Matick Chevrolet, Inc.,* 4 Conn.Cir. 685, 239 A.2d 42 (1967). See generally Annot., 22 A.L.R.3d 1387. Instantly, we are in accord with the conclusion of the lower court that when appellant, a dealer in new and used trucks, sold appellee a used truck represented to have a completely rebuilt engine, an appropriate implied warranty of merchantability was created.

Furthermore, even if we were disposed to rule that Section 2–314 was inapplicable to the sale of a used motor vehicle, Section 2–315 (12A P.S. § 2–315) of the U.C.C. provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose." As in the case of the implied warranty of merchantability, several other jurisdictions have recognized the appropriateness of finding a breach of an implied warranty of fitness for a particular purpose when a dealer sells a used vehicle which proves unfit for its intended purpose. See *Overland Bond and Investment Corp. v. Howard,* supra; *Brown v. Hall,* supra; *Green v. Northeast Motor Company,* 166 A.2d 923 (D.C.Mun.App.1961). See also *Goepfert v. Town Motors Automobile Co., Inc.,* 1 Bucks 134 (Pa.C.P. 1951). In the case at bar, appellee testified that he advised appellant that a suitable truck was needed for his timber

hauling business and, furthermore, he desired a truck with a rebuilt engine that would last for three years. While appellant denied the existence of any reliance by appellee on appellant's skill and judgment, the lower court weighed the conflicting testimony and specifically concluded that "[appellee] relied on [appellant's] skill or judgment in furnishing a truck with a rebuilt engine suitable for the purpose." Under these circumstances, we hold that an implied warranty of fitness for a particular purpose arose by operation of law at the time appellant sold and delivered the truck in question to appellee.

█ Appellant's alternative and final contention is that the implied warranties had terminated because of the use to which the truck was put and the work and service performed on it while in appellee's possession. When appellant purchased the truck the odometer had approximately 50 miles on it and during the five and one-half months appellee had use of the truck he added another 6,100 miles. However, appellee's witness testified that a normal engine of this type would run two to three hundred thousand miles. In addition, the testimony indicates that almost from the day of purchase appellee experienced numerous and sundry mechanical problems with the truck which necessitated frequent repair work. The question of whether the subsequent repairs severed the chain of causation from any pre-existing defect was clearly an issue to be resolved by the fact-finder. *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736 (1977). In this regard, the court below stated:

> "The court specifically finds from the weight of the evidence that [appellee] properly maintained the truck from purchase through the date of failure and that the failure of the engine did not result from neglect on the part of [appellee] to maintain proper oil in the engine; nor was there any repair to the truck during this period which would reasonably be expected to have caused the failure."

In light of appellant's failure to advance any compelling reason for rejecting this finding, we perceive no justification for disturbing it.

Judgment affirmed.

JACOBS, President Judge, concurs in the result.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.