469 A.2d 1138

**DORMONT MANUFACTURING COMPANY, INC., Appellant,**

v.

**ITT GRINNELL CORPORATION.**

Superior Court of Pennsylvania.

Argued Sept. 27, 1983.

Filed Dec. 30, 1983.

18

S. Asher Winikoff, Pittsburgh, for appellant.

Samuel H. Elkin, Pittsburgh, for appellee.

Before BROSKY, McEWEN and BECK, JJ.

BECK, Judge:

Dormont Manufacturing Company (Dormont) sued ITT Grinnell Corporation (Grinnell) in assumpsit, claiming breach of warranties in Grinnell's sale of parts for flexible gas connectors manufactured by Dormont. Grinnell counterclaimed for the sales price of the connectors. The court of common pleas, Allegheny County, entered a nonjury verdict for Grinnell on both the claim and the counterclaim and denied Dormont's exceptions. Judgment was entered against Dormont on October 16, 1981 and this appeal followed.

The controversy in this suit arose out of the composition of the fittings, or unions, that are placed at the end of flexible metallic gas hose. These unions are composed of three pieces of metal joined at a seat. Dormont, a manufacturer of hose connectors for commercial and residential use, bought the fittings from their supplier, Grinnell, beginning in 1973. For a few years the seats of the fittings were made of brass. Brass is an acceptable medium for use in fittings where natural gas is transmitted in the hose. At some time prior to October 1977, Grinnell changed its manufacture of the seat and began to use copper in place of brass. Copper seats are satisfactory for the pumping of water or oil, but do not meet the standards of the American Gas Association for the transportation of natural gas. As a result of the substitution, Dormont claims, they suffered business losses in the form of rejection of Dormont connectors by several purchasers. In particular, Dormont claims damages resulting from rejection of a shipment of 420 hose connectors to the Southern California Gas Company in October 1977.

■ Dormont first claims that the sale of the fittings with a copper rather than a brass seat breached an express warranty under § 2–313 [1] of the Uniform Commercial Code

1. **§ 2–313. Express Warranties by Affirmation, Promise, Description, Sample**
   (1) Express warranties by the seller are created as follows:

(12A. P.S. § 2–313, *Rep.*, recodified as 13 Pa.C.S. § 2313). Dormont claims reliance on an express warranty in Grinnell's catalogue description of the item. However, Grinnell's catalogue was withdrawn from evidence during the trial by Dormont's counsel, R. 81–82a, and Dormont's exceptions make no reference to the catalogue. Therefore, Dormont is precluded from making this argument on appeal.

■ Dormont also argues that reliance on past sales of fittings with brass seats created a "part of the bargain" between the parties under an express warranty. § 2–313 posits the "basis of the bargain" in an express warranty as either (a) an affirmation of fact or promise made by the seller to the buyer; or (b) any description of the goods; or (c) any sample or model.

The question therefore turns on whether Grinnell made an affirmation, promise or description upon which Dormont relied, or whether a sample or model formed part of the bargain. Dormont avers no affirmation, promise or description, but avers that it relied on the satisfactory brass seats that were provided by Grinnell in prior sales.

We must then inquire whether the product furnished in past sales acted as a sample or model within the meaning of § 2–313, and we conclude that satisfactory prior sales alone do not constitute such a sample or model. Comment 6 to § 2–313 states:

> This section includes both a "sample" actually drawn from the bulk of goods which is the subject matter of the sale, and a "model" which is offered for inspection when

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates and express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

the subject matter is not at hand and which has not been drawn from the bulk of goods.

In the instant case, fittings supplied in prior sales are not fittings drawn from the bulk of the goods in the challenged sale, nor were they offered for inspection prior to the sale. The Comment is clear that a sample or a model is something exhibited as such by the seller.

Although we find no Pennsylvania case precisely on point, we are influenced by the discussion in *Agricultural Services Association, Inc. v. Ferry-Morse Seed Co.,* 551 F.2d 1057 (6th Cir.1977) (construing § 2–313 in the law of California and Tennessee). That Court held that when a buyer makes a purchase relying on satisfactory past sales, the prior description and prior product do not constitute a sample absent proof that the parties mutually agreed that the prior description or sample was part of the bargain in question. See also Anderson, *Uniform Commercial Code* (1983), Vol. 3, 2–313:39 and 313:93 which states that there is no sale by sample when a purchase is made because of the buyer's past experience with the product; and 67 *Am.Jur.* 2d, Sales, (1976), § 456 which states that the primary test under the Uniform Commercial Code is the manifest intention of the parties to treat a sample as the basis of the bargain.

We therefore hold that under § 2–313, an express warranty is not created by the buyer's reliance on past sales, absent proof that both parties mutually agreed that the past sales constituted a sample for the present bargain.

■ Dormont next claims that Grinnell breached an implied warranty of merchantability under § 2–314.[2] How-

---

**2.** **§ 2–314. Implied Warranty: Merchantability; Usage of Trade**
   (1) Unless excluded or modified (Section 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
   (2) Goods to be merchantable must be at least such as
   (a) pass without objection in the trade under the contract description; and

ever, at trial it was adduced that the copper-seated unions were altogether satisfactory for the transmission of water and oil, R. 36a, 166a, possibly even better than those made of brass, and the lower court found as fact that the fittings were fit for ordinary purposes without defect. We find no breach of implied warranty of merchantability.

■ Dormont also claims that the substitution of copper for brass breached an implied warranty of fitness for particular purpose under § 2–315,[3] because copper is unsatisfactory for the transmission of natural gas. (Copper deteriorates in the presence of sulphur, a component of natural gas. R. 36a). However, the language of § 2–315 clearly states that this warranty is made only when the seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . . .".

Dormont offered no evidence that it relied on Grinnell's skill or judgment in buying the fittings. In the absence of any proof that Grinnell knew that Dormont was relying on its skill or judgment to provide seats for connectors what would be fit for the purpose of transmitting natural gas, no breach or implied warranty for fitness for particular purpose has been established, and Dormont cannot prevail on this argument. *Roupp v. Acor*, 253 Pa.Super. 46, 384 A.2d

(b) in the case of fungible goods, are of fair average quality within the description; and

(c) are fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit among all units involved; and

(e) are adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label if any.

3. **§ 2–315. Implied Warranty: Fitness for Particular Purpose**
Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

968 (1978); *Sessa v. Riegle*, 427 F.Supp. 760 (D.C.Pa.1977); *Barney Machinery Co. v. Continental M.D.M. Inc.*, 434 F.Supp. 596 (D.C.Pa.1977); *Lesnefsky v. Fischer & Porter Co. Inc.*, 527 F.Supp. 951 (D.C.Pa.1981); *Wright v. Federal Machine Co. Inc.*, 535 F.Supp. 645 (D.C.Pa.1982) (all construing Pennsylvania law).

Since we find that the lower court correctly determined that Grinnell breached no warranty, express or implied in the sale of the copper-seated fittings, we find it unnecessary to reach Dormont's final claim of error on the issue of damages resulting from the seller's breach.

The order of the lower court denying Dormont's exceptions is affirmed.